IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

v.

BCD SEMICONDUCTOR
CORPORATION, a California corporation,
SHANGHAI SIM-BCD
SEMICONDUCTOR MANUFACTURING,
CO., LTD, a China corporation,

        Defendants.

C.A. No. 07-633-JJF

**REDACTED**

---

**POWER INTEGRATIONS' OPENING BRIEF IN SUPPORT OF ITS MOTION FOR
ENTRY OF A PRELIMINARY INJUNCTION**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247) (marsden@fr.com)
Kyle Wager Compton (#4693) (kcompton@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Facsimile:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA  02110-2804
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070
Facsimile:  (650) 839-5071

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.

DATED:  January 25, 2008

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF FACTS ....................................................................................3

II.   STATEMENT OF LAW.....................................................................................4

III.  ARGUMENT .....................................................................................................5

    A.    Power Integrations Has More Than a Reasonable
        Likelihood of Success on the Merits..........................................................5

    B.    Power Integrations Will Be Irreparably Harmed Without
        a Preliminary Injunction ........................................................................10

    C.    The Balance of Hardships Favors Entry of a Preliminary
        Injunction ..............................................................................................14

    D.    The Public Interest Will Be Served by Entry of a
        Preliminary Injunction ..........................................................................16

IV.   CONCLUSION................................................................................................17

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*800 Adept, Inc. v. Murex Sec., Ltd.*,
    505 F. Supp. 2d 1327 (M.D. Fla. 2007) ........................................................................ 10

*Atlas Powder Co. v. Ireco Chemicals*,
    773 F.2d 1230 (Fed. Cir. 1985) .................................................................................... 9

*C.f. Hybritech, Inc. v. Abbott Laboratories*,
    4 U.S.P.Q. 2d 1001 (C.D.Cal.1987) ........................................................................... 16

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
    903 F.2d 186 (3d Cir. 1990) ....................................................................................... 13

*Impax Laboratories, Inc. v. Aventis Pharm., Inc.*,
    235 F. Supp. 2d 390 (D. Del. 2002) ........................................................................... 16

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
    429 F.3d 1364 (Fed. Cir. 2005) .................................................................................... 6

*Polymer Techs., Inc. v. Bridwell*,
    103 F.3d 970 (Fed. Cir. 1996) ..................................................................................... 4

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
    237 F.3d 1359 (Fed. Cir. 2001) ............................................................................. 4, 10

*In re Seagate*,
    497 F.3d 1360 (Fed. Cir. 2007) .................................................................................... 5

*Visto Corp. v. Seven Networks, Inc.*,
    2006 WL 3741891 (E.D. Tex. Dec. 19, 2006) ............................................................ 11

*Windsurfing International, Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986) .................................................................................... 14

## FEDERAL STATUTES

35 U.S.C. § 283 ................................................................................................................. 4

Fed. R. Civ. P. 41(a) ......................................................................................................... 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

v.

BCD SEMICONDUCTOR
CORPORATION, a California corporation,
SHANGHAI SIM-BCD
SEMICONDUCTOR MANUFACTURING,
CO., LTD, a China corporation,

        Defendants.

C.A. No. 07-633-JJF

**HIGHLY CONFIDENTIAL
FILED UNDER SEAL
PURSUANT TO LOCAL RULE 26.2**

## POWER INTEGRATIONS' OPENING BRIEF IN SUPPORT OF ITS MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION

Power Integrations, Inc. ("Power Integrations") is a proven innovator in the field of

power supply controller integrated circuits ("ICs" or "chips"), having developed a number of

patented technologies related to such chips. Power Integrations has repeatedly protected its

innovation by enforcing its patent rights, including in this Court. Despite the filing of Power

Integrations' complaint, Defendants BCD Semiconductor Corporation and Shanghai SIM-BCD

Semiconductor Manufacturing Co., LTD (collectively, "BCD") continue to infringe Power

Integrations' patents, displace Power Integrations at major customer accounts, and erode the

prices at which Power Integrations can sell its own patented chips. Power Integrations therefore

brings this motion to preliminarily enjoin BCD from infringing one of those patents: the '876

digital frequency jitter patent, which Fairchild Semiconductor Corp. and Fairchild

Semiconductor International, inc. (collectively, "Fairchild") also infringe and which a jury in this

District recently found to be valid.

# REDACTED

Indeed, it is remarkable that BCD's infringement continues despite its knowledge of Power Integrations' success in the concurrent Fairchild litigation involving the '876 patent (and another of the three patents asserted here, the '851 jitter patent), as BCD sent its attorneys to observe the recent trial in which the jury affirmed the validity of Power Integrations' patents. [*See* the concurrently filed Declaration of Howard G. Pollack ("Pollack Decl.") ¶ 2.]  In fact, like Fairchild, BCD appears to be taking advantage of the length of time it takes to fully resolve legal disputes on the merits, in order to cause substantial disruption with Power Integrations' customers and irreparable harm to Power Integrations' business.  Today, Samsung cell phone chargers with infringing BCD chips are available on the shelf in Wilmington—and Power Integrations believes discovery will show that the volume of the infringement in Delaware has been substantial.  But for BCD's infringement, BCD would not have been able to make the chip sales to Power Integrations' customers that result in consumer products like Samsung cell phone chargers lining the shelves of cell phone retailers in Wilmington.

When Power Integrations learned that infringing BCD chips had penetrated the U.S. market and were contained in products being sold in Wilmington, Power Integrations filed its complaint in Delaware.[2]  The validity of the '876 patent was challenged by Fairchild in a related case,[3] but now that the jury has resolved

---

[1]

[2]    Power Integrations originally brought suit in California, where BCD maintains a facility, but dismissed that suit in favor of the present case when it learned of the widespread availability of the infringing products in this District, and in view of this Court's close familiarity with the patents and technology at issue.

[3]    *Power Integrations v. Fairchild Semiconductor*, No. 04-1371 JJF (D. Del.).

2

the validity challenge to the '876 patent in Power Integrations' favor[4] and the parties in that case have completed their post-trial briefing,[5] Power Integrations brings this motion for preliminary injunction with respect to the '876 patent to prevent BCD from further irreparably harming Power Integrations in the market for power supply controller chips, including those used in high end Samsung cell phone chargers.  Specifically, Power Integrations respectfully asks this Court to enter a preliminary injunction to prevent BCD from infringing, inducing infringement, or contributing to the infringement of claim 1 of the '876 patent by making, using, importing, offering to sell, or selling infringing devices, including specifically the AP3700 and AP3710 chips and power supplies containing the same, or inducing or contributing to such infringement by others.

## I.    STATEMENT OF FACTS

On June 14, 2007, Plaintiff Power Integrations filed suit against BCD in the Northern District of California, alleging infringement of three United States Patents: U.S. Pat. No. 6,249,876 ("the '876 patent"), U.S. Pat. No. 6,107,851 ("the '851 patent"), and U.S. Patent No. 5,313,381 ("the '381 patent").  On October 15, 2007, having obtained evidence that Samsung cell phone chargers with infringing BCD chips were available for sale in Wilmington [*See* the concurrently filed Declaration of James E. Hauck ("Hauck Decl."), the concurrently filed Declaration of Steven Thompson ("Thompson Decl."), Compton Decl. ¶ 2], Power Integrations filed a notice of voluntary dismissal of the Northern District case pursuant to Fed. R. Civ. P. 41(a) and simultaneously filed a substantially identical complaint against BCD in this district. The Northern District case was dismissed without prejudice on October 16, 2007.

---

4    *See* Ex. A (Case No. 04-1371-JJF, D.I. 555 - Verdict Form).  All exhibit citations refer to the accompanying Declaration of Kyle Wagner Compton ("Compton Decl.") unless noted otherwise.

5    The parties completed their post-trial briefing in the Fairchild matter on January 16, 2008.

This Court had already presided over cases addressing all three of the patents-in-suit and construed the terms of all three patents. Late last year, a jury in this District rejected a challenge to the validity of two of the three patents-in-suit, affirming the validity of the '876 and '851 patents. In a prior proceeding, another Delaware jury affirmed the validity of the '381 patent and found that Motorola infringed that patent. In view of the Court's familiarity and experience with the patents-in-suit, Power Integrations filed a notice of related case, and the case was assigned to this Court on October 24, 2007. The Court set an initial scheduling conference in this matter for February 7, 2008.

## II.    STATEMENT OF LAW

The grant or denial of a preliminary injunction under 35 U.S.C. § 283 in a patent infringement case is within the sound discretion of the district court. *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. 1996). Section 283 permits the Court to grant injunctions "in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The moving party must establish the right to a preliminary injunction in light of four factors: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of the hardships; and (4) the impact of the injunction on the public interest. *Polymer Techs.*, 103 F.3d at 973. Reasonable likelihood of success on the merits encompasses two components: (1) plaintiff will likely show that its patent is infringed; and (2) any challenges to the validity and enforceability of the patent "lack substantial merit." *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001). A movant who clearly establishes a reasonable likelihood of success on the merits receives the benefit of the presumption of irreparable harm. *Id.*

The Federal Circuit recently reaffirmed the importance of a preliminary injunction in preventing post-suit willful infringement. In the case of *In re Seagate*, 497 F.3d 1360 (Fed. Cir. 2007), the court noted that "when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement." *Id.* at 1374. In doing so, the Federal Circuit encouraged courts to give greater consideration to preliminary injunctions in patent cases.

## III.   ARGUMENT

Power Integrations produces and sells highly specialized integrated circuits that incorporate its patented inventions. Power Integrations seeks injunctive relief to protect its investment in the research and development of these new technologies, and to protect the market it built by selling its innovative products. These are precisely the facts upon which courts have granted injunctive relief in previous cases, and precisely the reasons this Court should do so here.

### A.   Power Integrations Has More Than a Reasonable Likelihood of Success on the Merits

The first factor to consider in this case, and perhaps most important, is whether Power Integrations can show that it has a "reasonable likelihood" of proving that claim 1 of the '876 patent is both valid and infringed. In this case, the analysis is aided by the fact that the '876 patent has already been construed by this Court, the infringement analysis is straightforward, and the validity of the '876 patent has been rigorously (and unsuccessfully) challenged by similarly-situated defendants. BCD infringes the '876 patent and the patent is valid.

Regarding the validity of the '876 patent, this Court need not speculate. Fairchild, a large and sophisticated company with every motivation to invalidate Power Integrations' patents, recently invested vast resources in an attempt to show that the '876 patent was invalid. Fairchild

# REDACTED

identified dozens of prior art references, but despite all of that investigation, at trial Fairchild was unable to identify any reference that taught all of the limitations in claim 1 of the '876 patent. [Ex. B (Trial Tr. 9/19/07) D.I. 557 at 835:9-840:19.]  Instead, Fairchild's expert could only opine that the patent was obvious in light of the prior art, but even that contention was rejected by the jury.  [*Id.*; Ex. A (Verdict Form) at 3.]  The validity of the '876 patent has been thoroughly tested, and it is highly likely that future challenges will be equally unsuccessful.[6]

Infringement is similarly straightforward.  The infringement analysis is a two-step process: first, the claims must be construed, and second, the properly construed claims must be applied to the allegedly infringing devices.  *See Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1372 (Fed. Cir. 2005).  This Court already completed the first step when it construed the terms of the '876 patent in the Fairchild litigation [Exs. C-D (Case No. 04-1371-JJF, D.I. 231-32)], and there is no reason the Court's claim constructions should change during this case.  As for comparing the properly construed claims to the allegedly infringing devices, the claim requires three components – a counter, an oscillator, and a digital-to-analog converter – coupled together to "jitter" the oscillator's frequency to reduce electromagnetic interference ("EMI").  Power Integrations' expert has reviewed the BCD datasheets and concluded that the accused products do in fact literally infringe claim 1 of the '876 patent.[7] [*See* the concurrently filed Declaration of Robert Blauschild ("Blauschild Decl.") ¶¶3-5.]

---

[6]    Fairchild has also asked the PTO to reexamine the validity of the '876 patent, but in doing so Fairchild merely relied on the same three references it asserted during the course of litigation with Power Integrations, so there is no reason to believe the outcome will be any different. To date, the Patent Office has not even issued a substantive office action.

[7]

# REDACTED

There is no question that BCD's chips have frequency jitter—BCD's datasheets, available online at BCD's website www.bcdsemi.com, explain that BCD's AP3700 parts have frequency jitter, which BCD calls "Frequency Dithering for Low EMI." [Blauschild Decl. Ex. A (AP3700/A datasheet,[8] Rev 1.3, Jun. 2007) at 1).] The BCD data sheets also explain that the AP3700 includes a frequency jittering circuit that varies the switching frequency of 60 kHz by ± 2.5 kHz. Thus, the 60 kHz frequency is the "nominal" or "target frequency", and the frequency is varied 2.5 kHz above and below (i.e. about) that target frequency by that amount. [*Id.*] BCD's datasheets also contain an oscilloscope plot demonstrating the frequency dither feature. [*See id.* at Fig. 9.]

As for the detailed implementation of frequency jitter in BCD's chips,

---

[8]  The data sheets for BCD's AP3700, AP3700A, AP3700E, and AP3710 parts all describe the frequency jitter (i.e. "frequency dither" or "frequency dithering") features in a substantially identical manner, and the analysis is equally applicable to each of the parts. *See* Blauschild Decl. ¶ 7, fn. 1.

[9]  The referenced figures are contained in the accompanying Declaration of Robert Blauschild.

**REDACTED**

# REDACTED

Because the evidence shows clearly that BCD infringes claim 1 of the '876 patent, Power

Integrations has a strong likelihood of success on the merits in this case.

In fact, there is *more* than a mere reasonable likelihood that Power Integrations will prove

the accused products infringe claim 1 of the '876 patent and that the patent will be held valid—

courts do not typically have the luxury of considering patents that have already been construed,

or whose validity has already been tested and confirmed, in litigation.  In those rare cases where

the Court did have such a luxury, the Federal Circuit confirmed the importance of a prior

adjudication in the preliminary injunction analysis. *Atlas Powder Co. v. Ireco Chemicals*, 773

F.2d 1230 (Fed. Cir. 1985).  In *Atlas Powder*, the patentee was involved in two infringement

actions—the first against DuPont in Texas, and the second against Ireco in Kansas. *Id.* at 1231.

After the Texas court found that the patent was valid and infringed by DuPont, a finding

affirmed on appeal, the Kansas court entered a preliminary injunction against Ireco. *Id.*  Ireco

attacked the Kansas court's determination that there was a reasonable likelihood of success, but

the Federal Circuit agreed that the DuPont litigation was a factor that should be considered in making this determination:

> We agree with Ireco that [the district court] is not *bound* by the prior adjudication, as under the doctrine of res judicata. But that is not the use made of the prior adjudication. Rather, [the patentee] is using the prior adjudication as *evidence supporting its burden of proving a likelihood of success on the merits*. For this use, the patent need not be adjudicated in a prior litigation between the same parties. This evidence is relevant, especially where, as here, Ireco contests validity by rearguing references previously considered by the U.S. Patent and Trademark Office (PTO), the District Court for the Northern District of Texas, and by this court, all of which found the [invention] patentable over those same references.

*Id*. at 1232 (second emphasis added).

Similarly, in this case, the fact that the patent in question was not invalidated after three years of litigation with a similarly-situated defendant strongly indicates that Power Integrations is likely to succeed on the merits in this case, and that a preliminary injunction is an appropriate way to stop BCD's ongoing infringement.

### B.    Power Integrations Will Be Irreparably Harmed Without a Preliminary Injunction

As discussed above, there is a strong likelihood that Power Integrations will succeed on the merits of this case. This means that Power Integrations is entitled to a presumption that it will suffer irreparable harm and that it is entitled to a preliminary injunction. *Purdue Pharma.*, 237 F.3d at 1363. Even if this presumption were not made, however, ample evidence supports the fact that Power Integrations will be irreparably harmed if this Court does not enjoin the sale, offer for sale, and importation of infringing products.

First, district courts have recognized that industry pioneers, like Power Integrations, who create markets for pioneering technologies are necessarily irreparably harmed by infringement. "[W]here a company pioneers an invention in the marketplace, irreparable harm flows from a competitor's attempts to usurp the pioneering company's market position and goodwill." *800*

# REDACTED

*Adept, Inc. v. Murex Sec., Ltd.*, 505 F. Supp. 2d 1327, 1337 (M.D. Fla. 2007). Power

Integrations has built a market around its patented technology, especially the jitter feature

protected by the '876 patent, because its patents provide significant improvements over

competitive technologies. [*See* the concurrently filed Declaration of Bruce Renouard

("Renouard Decl.) ¶ 2; Ex. E (Validity Trial Trans. 9/19/07 (D.I. 557) and 9/20/07 (D.I. 558)) at

887:3-889:22, 897:8-901:15, 958:19-21, 959:13-960:13, 961:6-22; Ex. F (Infringement Trial Tr.

10/4/06) D.I. 418 at 647:2-21.] The superiority of Power Integrations technology has been

recognized by industry analysts. [*See, e.g.,* Ex. G (SG Cowen Feb. 3, 2006 Report, SGC0106-

0123) at SGC0113; Ex. H (SG Cowen June 22, 2005 Report, SGC0332-0343) at SGC0333.]

Power Integrations has also won numerous industry awards for its technology generally and has

been recognized by government agencies for its contributions to the field of power supply

technology. [*See* Ex. I (selected awards and press releases).] Power Integrations is a pioneer,

and its ability to continue in that role is threatened when repeated infringement goes unchecked

through the months and years necessarily involved in the full process of litigation.

Second, BCD has denied Power Integrations the exclusive use of its patented technology

to which it is entitled. Patentees are likely to suffer irreparable harm when an infringing product

is offered in direct competition with a patentee. *See Visto Corp. v. Seven Networks, Inc.*, 2006

WL 3741891 at *4 (E.D. Tex. Dec. 19, 2006) ("Intellectual property enjoys its highest value

when it is asserted against a direct competitor in the plaintiff's market."). BCD competes

directly with Power Integrations in the market for the integrated power supply controller chips at

issue in this case, and by infringing Power Integrations' frequency jitter patent,

# REDACTED

Samsung cell phone chargers with infringing BCD chips are available on the shelf in Wilmington [*see* Hauck Decl., Thompson Decl., Compton Decl. ¶ 2)], BCD's direct competition irreparably harms Power Integrations.

The harm to Power Integrations is particularly severe in that Power Integrations essentially offers only one type of product—integrated power supply controller chips—and cannot compensate for the loss of any customer by cross-selling additional products to its remaining customers, or recapture lost customers by offering a full range of products. [*See* Ex. J (Fairchild Infringement Trial Tr. 10/3/06) D.I. 417 at 601:14-19; Ex. K (Power Integrations' 2005 10-K, PX 387) at 7; Ex. L (Fairchild Validity Trial Tr. 9/19/07 and 9/20/07) at 873:19-879:16, 887:3-889:22, 897:8-901:15, 952:18-953:16, 958:19-21, 959:13-960:13, 961:6-22.] The damage that BCD has caused to Power Integrations by offering to sell and selling infringing products in direct competition with Power Integrations—

# REDACTED

—cannot be repaired by money damages alone.

Only the exclusion of infringing parts—a right bestowed specifically by a patent—can remedy this ongoing infringement

Finally, there is no guarantee that BCD will ultimately be able to satisfy an award of damages if the Court denies the injunction. *See Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 205-06 (3d Cir. 1990) ("Appellants contend at the outset that the possibility of an unsatisfied money judgment cannot, as a matter of law, constitute irreparable injury for purposes of granting a preliminary injunction. We find ample authority to

# REDACTED

the contrary, however."). As such, any delay in the entry of an injunction will irreparably harm Power Integrations.

### C.   The Balance of Hardships Favors Entry of a Preliminary Injunction

Like the "irreparable harm" factor discussed above, and for many of the same reasons discussed above, the balance of hardships in this case strongly favors a grant of injunctive relief. Power Integrations will suffer further loss of market share, price erosion, reputational harm, and loss of goodwill if BCD is allowed to continue selling infringing products. Further, if Power Integrations is not afforded injunctive relief, other competitors will be encouraged to infringe Power Integrations' patents as well.

. The only way to preserve the status quo, without further market erosion, is to grant a preliminary injunction.

By way of comparison, the harm that BCD will endure if a preliminary injunction is entered is that it will no longer be able to infringe Power Integrations' patents. This hardship is imposed by law, rather than by the particular circumstances of this case, and should not be considered an unreasonable hardship if injunctive relief is warranted. The hardship to BCD of enjoining its infringement is limited to that normally expected when an injunction is imposed, and an infringer should not be heard to complain that an injunction will damage the business it has built around infringing products. *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the

14

business so elected."). This principle applies with special force here, where BCD monitored the Fairchild case to at least some degree and therefore knew precisely the risks and consequences associated with its conduct. [Pollack Decl. ¶ 2.]

Moreover, BCD is a diversified company, and it will endure less harm if it is enjoined than would a single-product company. BCD's promotional materials note that BCD offers a "broad portfolio of power management ICs" and "system-level solutions." [Ex. M (BCD web page available online at http://www.bcdsemi.com/en/News/introduction.aspx?ClassID=4 (printed Jan. 25, 2008)).] More specifically, the company offers Standard Linear and Linear Regulator IC products, AC/DC Converters, DC/DC Converters, various transistors and Schottky Barrier Rectifier products, as well as production process and foundry services. [Ex. N (BCD web page available online at http://www.bcdsemi.com/en/ProductCenter/product_information.aspx (printed Jan. 25, 2008)).] BCD's website also shows that its wide range of products can be used in a correspondingly wide variety of electronic applications. [Ex. O (BCD web page available online at http://www.bcdsemi.com/en/ProductCenter/app.aspx (printed Jan. 25, 2008)).]

The diversity of BCD's products, services, and addressable applications will permit BCD to continue to do business even if its infringement of the '876 patent is preliminarily enjoined. BCD will not be precluded from selling its other products and services, including non-infringing products, as it does and did before it began infringing Power Integrations' patents. Because the infringing products apparently represent a small portion of BCD's overall business, the hardship it will suffer as a result of an injunction is far outweighed by the harm that Power Integrations will suffer in the absence of one. The balance of hardships demonstrates that Power Integrations will be harmed far more by the failure to stop BCD's infringement.

# REDACTED

**D.     The Public Interest Will Be Served by Entry of a Preliminary Injunction**

Finally, the Court should find that public interests will be served by entry of a preliminary injunction against BCD.  Courts considering the public interest factor have consistently acknowledged public interest in a strong patent system and public policy favoring the enforcement of patent rights.  *See, e.g., Impax Lab., Inc.  v. Aventis Pharm., Inc.*, 235 F. Supp. 2d. 390, 396 (D. Del. 2002) ("The public has an interest in the enforcement of valid patents.  Typically, in a patent infringement case, although there exists a public interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief.") (internal citation omitted).  Although concerns about public health or safety might in some cases weigh against entry of an injunction, no such concerns exist here.  *C.f. Hybritech, Inc. v. Abbott Lab.*, 4 U.S.P.Q. 2d 1001, 1015 (C.D.Cal.1987) (public interest required that injunction not stop supply of medical test kits that the patentee itself was not marketing), *aff'd*, 849 F.2d 1446 (Fed. Cir. 1988).

Nor will the public policy favoring competition be disserved by entry of a preliminary injunction here.  First, BCD will remain free to offer non-infringing alternative technologies, as noted above.

Without the protections of its intellectual property, including the right to exclude enforced by injunction, Power Integrations could not maintain its level of investment in research

and development that has led to so many advances. Protecting innovation by Delaware corporations, like Power Integrations, that create and bring patented technologies to market for the benefit of society as a whole is what the patent system is all about, and that system works best when injunctions are granted in appropriate cases, like this one. Accordingly, the Court should grant Power Integrations' Motion for Entry of a Preliminary Injunction.

## IV.    CONCLUSION

This Court should enjoin BCD from infringing, inducing infringement, or contributing to the infringement of claim 1 of the '876 patent by making, using, offering to sell, or selling in the United States, or importing into the United States, infringing devices, including specifically the AP3700 and other substantially identical products and/or power supplies containing the same, and from inducing or contributing to such infringement by others.

Dated:  January 25, 2008

FISH & RICHARDSON P.C.

By: _____

William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19801
Telephone: (302) 652-5070
Facsimile:  (302) 652-0607
Email:  marsden@fr.com
Email:  kcompton@fr.com

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906

Howard G. Pollack
Michael R. Headley
Jonathan Lamberson
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile:  (650) 839-5071

ATTORNEYS FOR PLAINTIFF
POWER INTEGRATIONS, INC.

18

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2008, I caused to be served **POWER**

**INTEGRATIONS' OPENING BRIEF IN SUPPORT OF ITS MOTION FOR ENTRY OF**

**A PRELIMINARY INJUNCTION** on the following individuals, in the manner indicated:

<table>
<tr><td>

**VIA HAND DELIVERY AND E-MAIL**
Steven J. Balick
John Day
Tiffany Lydon
500 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

</td><td>

Attorneys for Defendants
BCD SEMICONDUCTOR
CORPORATION and SHANGHAI
SIM-BCD SEMICONDUCTOR
MANUFACTURING, CO., LTD

</td></tr>
<tr><td>

**VIA E-MAIL AND FIRST CLASS MAIL**
E. Robert Yoches
Joyce Craig
Finnegan, Henderson, Farabow,
    Garrett & Dunner, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413

</td><td>

Attorneys for Defendants
BCD.SEMICONDUCTOR
CORPORATION and SHANGHAI
SIM-BCD SEMICONDUCTOR
MANUFACTURING, CO., LTD

</td></tr>
<tr><td>

**VIA E-MAIL AND FIRST CLASS MAIL**
Erik R. Puknys
Finnegan, Henderson, Farabow,
    Garrett & Dunner LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203

</td><td>

Attorneys for Defendants
BCD SEMICONDUCTOR
CORPORATION and SHANGHAI
SIM-BCD SEMICONDUCTOR
MANUFACTURING, CO., LTD

</td></tr>
<tr><td>

**VIA E-MAIL AND FIRST CLASS MAIL**
Robert L. Burns
Finnegan, Henderson, Farabow,
    Garrett & Dunner LLP
Two Freedom Drive
Reston, VA 20190-5675

</td><td>

Attorneys for Defendants
BCD SEMICONDUCTOR
CORPORATION and SHANGHAI
SIM-BCD SEMICONDUCTOR
MANUFACTURING, CO., LTD

</td></tr>
</table>

Kyle Wagner Compton

50461297.doc