IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

    Plaintiff,

    v.

BCD SEMICONDUCTOR
CORPORATION, a California corporation,
SHANGHAI SIM-BCD
SEMICONDUCTOR MANUFACTURING,
CO., LTD, a China corporation,

    Defendants.

C.A. No. 07-633-JJF

**REDACTED**

## POWER INTEGRATIONS, INC.'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247) (marsden@fr.com)
Kyle Wagner Compton (#4693) (kcompton@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19801
Telephone:  (302) 652-5070
Facsimile:  (302) 652-0607

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906

Howard G. Pollack
Michael R. Headley
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile:  (650) 839-5071

**ATTORNEYS FOR PLAINTIFF
POWER INTEGRATIONS, INC.**

DATED:  February 6, 2008

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDING....................................3

II.   SUMMARY OF ARGUMENT.............................................................3

III.  STATEMENT OF FACTS................................................................4

IV.   ARGUMENT.............................................................................8

    A.  Defendants Are Subject to Personal Jurisdiction in Delaware.....................9

        1.    The Delaware Long Arm Statute Reaches BCD................................10

            a.  BCD ignores the most relevant authorities demonstrating the propriety
            of exercising personal jurisdiction…,......................................10

            b.  BCD incorrectly relies on the *Siemens* decision, whereas the more
            relevant authorities demonstrates that this Court has personal
            jurisdiction over BCD.....................................................13

        2.    The Exercise of Personal Jurisdiction over BCD Comports with
        Due Process.................................................................19

            a.  BCD Has Purposeful Minimum Contacts With Delaware..................19

            b.  The Exercise of Personal Jurisdiction Over BCD Will Not Offend
            Traditional Notions of Fair Play and Substantial Justice....................22

    B.    If the Court Is Unable to Find Personal Jurisdiction at this Juncture, Power
        Integrations Should Be Permitted to Take Jurisdiction Discovery.............25

V.    CONCLUSION...........................................................................27

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Asahi Metal Indus. Co. v. Superior Court,*
    480 U.S. 102 (1987) ...................................................................12

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
    21 F.3d 1558 (Fed. Cir. 1994)........................................... passim

*Commisariat L'Energie Atomique v. Chi Mei Optoelectronics Corp.*
    395 F.3d 1315 (Fed. Cir. 2005)........................................ passim

*Energy Transport Group, Inc. v. William Demant Holding A/S,*
    2008 WL 78748 (D. Del. Jan. 4, 2008).............................14, 25

*In re Elonex Phase II Power Management Litigation,*
    2003 WL 21026758 (D. Del. May 6, 2003)............................14

*Intel Corp. v. Broadcom Corp.,*
    167 F. Supp. 2d 692 (D. Del. 2001)............................9, 10, 14

*Intel Corp. v. Silicon Storage Tech.,*
    20 F. Supp. 2d 690 ..................................................................9, 17

*Jeffreys v. Exten,*
    784 F. Supp. 146 (D. Del. 1992)..............................................10

*M & L of Delaware v. Wallace,*
    2004 WL 2370708 (D. Del. Oct. 18, 2004) ...................9, 23, 25

*Mobil Oil Corp. v. Advanced Environmental Recycling Techs., Inc.,*
    833 F. Supp. 437 (D. Del. 1993).............................................18

*Motorola Inc. v. PC-Tel, Inc.,*
    58 F. Supp. 2d 349 (D. Del. 1999)..........................................14

*Padcom, Inc. v. NetMotion Wireless, Inc.,*
    2004 WL 1192641 (D. Del. May 24, 2004)............................14

*Philips Electrics N. America Corp. v. Contec Corp.,*
    2004 WL 503602 (D. Del. Mar. 11, 2004) .......................... passim

*Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.,*
    69 F. Supp. 2d 622 (D. Del. 1999).................................13, 14, 18

*Thorn EMI N. America, Inc. v. Micron Tech., Inc.,*
    821 F. Supp. 272 (D. Del. 1993)..............................................................23

*Transportes Aeros de Angola v. Ronair, Inc.,*
    544 F. Supp. 858 (D. Del. 1982)..............................................................10

## STATE CASES

*Sample v.* Morgan,
    935 A.2d 1046 (Del. Ch. 2007)................................................................14

*Assist Stock Management L.L.C. v. Rosheim,*
    753 A.2d 974 (Del. Ch. 2000)..................................................................15

*Boone v. Oy Partek Ab,*
    724 A.2d 1150 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998) .................. passim

*Chandler v. Ciccoricco,*
    2003 WL 21040185 (Del. Ch. May 5, 2003) ...........................................15

*Hercules Inc. v. Leu Trust and Banking (Bahamas) Ltd.,*
    611 A.2d 476 (Del. 1992) .................................................................. passim

*LaNuova D&B S.p.A. v. Bowe Co.,*
    513 A.2d 764 (Del. 1986) .......................................................10, 14, 17, 18

*Wright v. America Home Products Corp.,*
    768 A.2d 518 (Del. Super. 2000)................................................15, 16, 17, 18

## STATUES

10 Del. C § 3104(c)...................................................................passim

10 Del. C § 3104(c)(1)...............................................................passim

10 Del. C § 3104(c)(4)...............................................................passim

BCD's infringing products are being sold in Delaware in large volumes. Power Integrations has easily obtained numerous samples of products containing the infringing BCD chips from a variety of locations throughout the state, yet BCD argues that it is not subject to the exercise of personal jurisdiction by this Court. In doing so, BCD fails to cite or deal with the most relevant case law, instead choosing to ascribe improper motives to Power Integrations' decision to proceed with this case in Delaware. Yet, at the same time it seeks dismissal, BCD is also in the midst of preparing a $75,000,000 initial public offering ("IPO") with Piper Jaffray, Needham & Company, and Deutsche Bank Securities, and BCD has advised potential investors that it has "established distribution channels" in the United States. [Ex. N[1] at 1 (BCD UBS presentation); Ex. O (BCD Company Profile) at 4 (identifying multiple distributor locations in the United States, more than in any other region).] BCD also concedes that at least one U.S. court has jurisdiction to resolve the instant dispute, having filed a mirror image declaratory judgment action against Power Integrations in the Northern District of California three days before moving to dismiss this lawsuit. These actions are inconsistent with the picture BCD attempts to paint in its motion to dismiss, and they demonstrate that the only reason BCD brought the instant motion was to escape this particular Court. BCD clearly prefers that this dispute be resolved slowly, in a congested docket, before a judge with no prior experience with the technology or the patents-in-suit. In view of the established distribution channels for BCD's products and significant infringement in Delaware, and further in view of the obvious and overwhelming efficiency of having this particular Court address the same patents it has addressed before, the Court should deny BCD's motion to dismiss.

---

[1]  Unless otherwise specified, all exhibits are attached to the concurrently-filed Declaration of Kyle Wagner Compton ("Compton Decl.").

# I.    NATURE AND STAGE OF THE PROCEEDING

Power Integrations initially sued BCD for infringement of U.S. Patent Nos. 6,249,876 ("the '876 patent"), 6,107,851 ("the '851 patent"), and 5,313,381 ("the '381 patent") in the Northern District of California on June 14, 2007, where BCD has a sales office. [D.I. 11 (BCD Opening Br.) Ex. 2.] Upon discovering that Samsung cell phone chargers containing BCD's infringing products were being sold in Delaware, however, Power Integrations voluntarily dismissed the California complaint and filed this lawsuit on October 15, 2007.[2] [D.I. 1.] Power Integrations' decision was driven by the efficiency and conservation of judicial resources that would be achieved by virtue of this Court's substantial familiarity with the technology and the patents at issue. Power Integrations has since moved to preliminarily enjoin BCD's ongoing infringement of the '876 patent. [D.I. 12.]

On January 18, 2008, BCD filed a mirror image declaratory action against Power Integrations in the Northern District of California seeking judgment that the '876, '851, and '381 patents are not infringed or invalid. [D.I. 11 (BCD Opening Br.) Ex. 3.] On January 21, 2008, notwithstanding the undisputed fact that BCD's infringing products are being sold in Delaware in large quantities, BCD moved to dismiss this action for lack of personal jurisdiction. [D.I. 10.]

# II.    SUMMARY OF ARGUMENT

1)    Personal jurisdiction over BCD is proper. BCD has placed its infringing products into the stream of commerce, resulting in the sale of cell phone chargers incorporating those products in Delaware. BCD's infringing products are being sold in Delaware pursuant to BCD's general business plan, which involves the use of established distribution channels for cell phones

---

[2] The harm to Power Integrations due to BCD's infringing sales to Samsung was so great that Power Integrations originally brought the suit in California as soon as it was able to confirm infringement. As soon as Power Integrations obtained evidence of infringing sales in Delaware, Power Integrations brought suit here.

and cell phone chargers. BCD does not and cannot dispute that its infringing products are sold in this judicial district, nor can it dispute that its key customers include Delaware corporations. Further, available evidence demonstrates that BCD was aware of and closely monitored Power Integrations' pending lawsuit against Fairchild in this District for infringement of the same patents now asserted against BCD. Thus, prior to and throughout the course of its infringement, BCD foresaw and appreciated the risk of being sued by Power Integrations for infringement in this Court. Accordingly, this Court's exercise of personal jurisdiction over BCD is proper, and BCD's motion to dismiss must be denied.

       2)     If the Court cannot determine on the present record whether BCD has placed its infringing products in the stream of commerce with the intent and purpose that its products would reach Delaware, Power Integrations should be permitted jurisdictional discovery.

## III.    STATEMENT OF FACTS

      As Power Integrations averred in its complaint, BCD's infringing products are currently offered for sale and sold in the state of Delaware. [D.I. 1 at ¶¶ 9, 12, 17, and 22.] Power Integrations has determined that Samsung cell phone chargers containing BCD's infringing power supply controller integrated circuits ("ICs" or "chips") are stocked on the shelves and readily available for sale — and have been sold in Delaware both before and during the course of this case — at multiple cell phone retailers throughout Delaware. [*See* the concurrently-filed Second Declaration of Steven Thompson ("Second Thompson Decl.") at ¶¶ 2-5; *see also* Compton Decl. at ¶¶ 2-13; D.I. 18 (Decl. of James E. Hauck); D.I. 19 (Decl. of Steven Thompson); D.I. 20 (Decl. of Kyle Wagner Compton) at ¶2.] BCD does not and cannot reasonably contest this fact.

      Power Integrations has also collected data from which a rough quantification of BCD's infringement in the state of Delaware can be made. Specifically, Power Integrations has

# REDACTED

determined from an informal sampling of a few dozen cell phone retailers that thousands of chargers containing BCD's infringing chips are currently in stock and available for immediate purchase. [*See* Compton Decl. at ¶¶ 5-13.]

Industry reports on cell phone sales and census bureau statistics thus suggest that tens of thousands of chargers containing BCD's infringing chips have been shipped into Delaware through established sales channels to date, including those distributed with the majority of the estimated 17,000 Samsung cell phones sold in Delaware in the third quarter of 2007 alone. [*See* Ex. K (NPD press release noting 38 million wireless handsets sold in the United States in Q3 2007, with Samsung capturing a 16% market share),[3] Ex. L (http://quickfacts.census.gov/qfd/states/10000.html showing that DE has .29% of the United States' 300 million people).]

Other evidence confirms these findings—BCD's infringing products are available for sale in Delaware retailers' stores and have been purchased by Delaware consumers because BCD intentionally and purposefully placed those products in the stream of commerce.

---

[3] For further statistics regarding U.S. cell phone usage, see also http://www.ctia.org/media/index.cfm/AID/10323.

**REDACTED**

BCD then knowingly and intentionally used Samsung's established distribution channels as part of a general business plan to sell its infringing chips throughout the United States, including in Delaware.

There is no question that BCD knew and intended that its infringing chips would be sold in Delaware, and that, through its actions, it risked being sued by Power Integrations for patent infringement in this District.  BCD made a calculated cost-benefit assessment of the profitability of infringing Power Integrations' patents and the risk of being sued for infringement.

BCD made a conscious decision to provide infringing products for use in Samsung chargers, intending that those infringing products would reach the U.S., including Delaware.  That BCD would later be sued in Delaware was readily foreseeable.  Knowing this, BCD monitored Power Integrations' lawsuit against Fairchild in this Court.  Counsel for BCD even attended the validity trial in that litigation in this Court.  [D.I. 14 (Decl. of Howard Pollack) at ¶ 2.]  BCD nevertheless opted to place its infringing products into those established distribution channels, fully aware that its infringement could result in its also being sued in this Court.

In addition to selling its infringing chips into the stream of commerce, BCD has recently engaged in significant additional commercial activity in an effort to raise capital in the United

States.  For example, in working with investment bank UBS,[4] BCD explained to potential

investors that BCD has both a sales office and "established distribution channels" in the United

States. [Ex. N at 1.]  In that same BCD-UBS presentation, BCD noted that its "key" customers

include household-name electronics companies, including Dell Inc., Hewlett Packard, Samsung,

Sony, and LG.  [*Id.* at ¶3]  In addition to the Samsung cell phone chargers noted above, BCD's

website also promotes the infringing chips as incorporated in desktop computers, set top boxes,

and portable DVD players. [Exs. P-S.]  BCD's website further demonstrates that BCD sells a

number of products that are incorporated into LCD monitors sold by ViewSonic, another

household-name electronics company.[5]  [Ex. R.]

     BCD suggests that this case should be dismissed despite the presence of its infringing

chips in goods bearing these sorts of brand names in Delaware, yet BCD's other corporate

materials explain that BCD has been "closely engaging with end-user applications" and

"engaging custom ICs business with market leading companies."  [Ex. O (BCD Company Profile

2006) at 13.]  It more than strains credibility for BCD to suggest that, despite these "close"

relationships with its "key customers," BCD has "no idea" where in the world its products are

sold and has no intention that they be sold in the leading market for consumer electronics in the

world, the United States.

     BCD's F-1 Registration Statement, recently filed with the SEC in connection with BCD's

planned $75,000,000 U.S. IPO, further explains that BCD "maintain[s] close, direct relationships

with key market-leading end users of our products, including Changhong and Foxconn in China,

---

[4]  Despite BCD's initial work with UBS, BCD ultimately chose different investment banks to
underwrite its IPO.

[5]  Although the page addressing LCD monitors on BCD's website does not list ViewSonic
Corporation ("ViewSonic") as a customer by name, it clearly incorporates ViewSonic's
trademarked "Three Birds" logo. *See* Ex. M (ViewSonic Marketing and Communications
Guidelines, available online at http://www.viewsoniceurope.com/data/59/guidelines.pdf).

ASUSTeK and Delta Electronics in Taiwan, Sony in Japan and LG and Samsung in South Korea." [Ex. I (BCD F-1, available online at http://www.sec.gov/Archives/edgar/data/1289814/000119312508013327/df1.htm).] BCD's F-1 also acknowledges that "we are able to track certain specific product sales to end customers" and explains that the specific chips BCD sells to its largest customer (Samsung) are subject to this litigation. [*Id.* at 24.] A video of BCD's road show presentation for the upcoming IPO is posted online and available in Delaware at the following link: http://www.retailroadshow.com/links/show.asp?c=BCDS. [Compton Decl. ¶ 20.] BCD extensively touts its sales to Samsung in that road show presentation [*id.*], and as noted above, Power Integrations has obtained dozens of physical samples of those BCD chips in Samsung cell phone chargers in Delaware. Based on publicly available data, Power Integrations estimates that thousands more have been sold and are still available for sale in Delaware today.

## IV.    ARGUMENT

The exercise of personal jurisdiction over BCD is proper here. BCD's conduct resulting in the shipment of infringing products into Delaware through established distribution channels, pursuant to BCD's general business plan, easily comes within the broad reach of Delaware's long-arm statute, which favors exercise of jurisdiction. Further, BCD's conduct, like the nearly identical infringing conduct considered in *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed. Cir. 1994), is sufficient to establish the purposeful minimum contacts with Delaware required by due process. Finally, this is not a rare case where exercise of personal jurisdiction would offend "fair play and substantial justice."

In an effort to avoid wasteful motion practice on the question of jurisdiction, and the delay it might cause, Power Integrations' counsel told BCD's counsel up-front that the basis for jurisdiction was the presence in Delaware of substantial numbers of downstream products

incorporating the infringing chips.  [*See* the accompanying Declaration of Howard G. Pollack ("Pollack Decl.") at ¶ 4 and Ex. B.]  Despite knowing this, BCD's moving papers barely mention the stream of commerce basis for jurisdiction, and they avoid altogether the most relevant authority on the subject.  Under the facts here, viewed in a light most favorable to non-movant Power Integrations, the exercise of personal jurisdiction over BCD is proper, and the Court should deny BCD's motion to dismiss.

### A.     Defendants Are Subject to Personal Jurisdiction in Delaware.

Power Integrations bears the burden of establishing a basis for this Court's exercise of personal jurisdiction over BCD.  *M & L of Delaware v. Wallace*, 2004 WL 2370708, at *2 (D. Del. Oct. 18, 2004) (citing *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 699 (D. Del. 2001)).  Determining whether BCD is subject to personal jurisdiction requires a two-step analysis.  *Id.*  The Court must determine whether Delaware's long-arm statute reaches BCD, and it must also determine whether subjecting BCD to jurisdiction in Delaware would comport with the Due Process clause of the Fourteenth Amendment.  *Id.* (citing *Intel v. Broadcom*, 167 F. Supp. 2d at 700 and *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 64 (D. Del. 1998)).

In considering BCD's challenge to personal jurisdiction, the Court must view evidence in the light most favorable to Power Integrations.  *Id.*   Because discovery has not yet commenced in this lawsuit, Power Integrations need only make a prima facie showing to satisfy its burden. *Id.* (citing *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, 1999 WL 615175, at*2 (D. Del. Aug. 3, 1999)).  Power Integrations has obtained more than sufficient evidence to demonstrate that the exercise of jurisdiction is proper in this case.

1.    **The Delaware Long Arm Statute Reaches BCD**

In applying the Delaware long-arm statute, this Court defers to the interpretations of the Delaware state courts. *Intel v. Broadcom*, 167 F. Supp. 2d at 700. The Delaware Supreme Court has construed § 3104(c) broadly "to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Hercules Inc. v. Leu Trust and Banking (Bahamas) Ltd.*, 611 A.2d 476, 480-81 (Del. 1992); *LaNuova D&B S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986) (same).

The broad construction of § 3104(c) is mandated by a legislative intent to provide Delaware residents a means of redress against those not subject to personal service of process within the state — "[i]n order to effectuate this intent, this section should be construed liberally so as to provide jurisdiction to the maximum extent possible. . . . [t]he only limit placed on § 3104 is that it remain within the constraints of the Due Process Clause." *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156-7 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998); *see also Transportes Aeros de Angola v. Ronair, Inc.*, 544 F. Supp 858, 864-5 (D. Del. 1982) (acknowledging "the intent of the legislature [in enacting § 3104(c)] to exercise jurisdiction over non-residents whenever feasible."). Accordingly, Delaware courts "will liberally interpret the statute in favor of exercising jurisdiction." *Jeffreys v. Exten*, 784 F. Supp. 146, 151 (D. Del. 1992) (citing *Waters v. Deutz Corp.*, 460 A.2d 1332 (Del. Super. 1983)).

a.    **BCD ignores the most relevant authorities demonstrating the propriety of exercising personal jurisdiction.**

Delaware courts have consistently recognized the applicability of stream of commerce theories to establish personal jurisdiction over non-residents. Personal jurisdiction over non-residents who cause injury in the state of Delaware through goods placed in the stream of commerce is proper under §§ 3104(c)(1)[6] and (c)(4)[7] of the Delaware long-arm statute. *Boone*,

---

[6]    § 3104(c)(1) permits jurisdiction over a defendant who "[t]ransacts any business or performs any character of work or service in the State."

724 A.2d 1157-58, *aff'd*, 707 A.2d 765 (Del. 1998). In *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 2004 WL 503602 (D. Del. Mar. 11, 2004), for example, the Court addressed a situation very similar to the case at bar – where an electronics subcomponent manufacturer sought to disclaim all responsibility for goods shipped to Delaware. The Court in *Philips* rejected the defendant's challenge and found competent the plaintiff's evidence of large numbers of goods in Delaware and an established distribution channel for the finished goods serving the Delaware market. *Id.* at *4-5. BCD ignores *Philips*, but the Court should follow *Philips* and find the exercise of personal jurisdiction proper in view of the evidence demonstrating a large number of infringing BCD chips in this District and an established distribution network for Samsung cell phone chargers incorporating the infringing BCD chips in this District.

BCD also ignores the Federal Circuit's decision in *Commisariat L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005), a case with almost identical facts to the case at bar. The *Chi Mei* decision further demonstrates that the exercise of jurisdiction over BCD is proper. In *Chi Mei*, a patentee asserted personal jurisdiction over a Taiwanese manufacturer of allegedly infringing components that were incorporated into other companies' products and imported into the United States through an established distribution channel. *Id.* at 1317. In *Chi Mei*, the patentee failed to present <u>any</u> evidence of pre-filing sales of devices incorporating the infringing products in Delaware, and the district court dismissed the lawsuit for lack of personal jurisdiction. *Id.* at 1318. On appeal, however, the Federal Circuit vacated the district court's dismissal and found that the overseas manufacture of components for

---

[7]   § 3104(c)(4) permits jurisdiction over a defendant who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State."

incorporation in down-stream products ultimately consumed in Delaware may have satisfied the Delaware long arm statute, and that it certainly satisfied one of the two competing Due Process standards for personal jurisdiction under the Supreme Court's decision in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987).[8] *Id.* at 1320. Having done so, the Court remanded the case for jurisdictional discovery to determine whether the patentee could also meet the Justice O'Connor standard in *Asahi* for stream of commerce jurisdiction. *Id.* at 1323. The Court suggested that pertinent evidence capable of satisfying the O'Connor standard might include "establishing channels for providing regular advice to customers in the forum State," "marketing the product through a distributor who has agreed to serve as the sales agent in the forum state," "knowledge that its products were being shipped to Delaware," "design and marketing efforts directed to the U.S. market (including Delaware)," and "the existence of marketing arrangements and demonstration that the [defendant's] website serves as a channel for providing regular advice to customers in the forum state." *Id.* at 1322-23 (internal quotations and citations omitted).

Here, Power Integrations has already provided evidence that was critically absent in the *Chi Mei* case — namely, that BCD's infringing products were both available for sale and sold in Delaware prior to the filing of this lawsuit. *See Philips*, 2004 WL 503602 at *5 n.5 (distinguishing the district court's dismissal in *Chi Mei* and finding jurisdiction in part because the patentee "uncovered evidence of actual sales and the presence of the accused device in Delaware prior and subsequent to the date the complaint was filed"). For this reason alone, the Court should find that Power Integration has carried its burden of demonstrating personal

---

[8] The Federal Circuit found that the evidence of a large volume of goods incorporating the infringing devices in Delaware satisfied the Justice Brennan standard for stream of commerce jurisdiction set forth in *Asahi*. 395 F.3d at 1320, 1323.

jurisdiction over BCD.  However, Power Integrations has gone beyond merely showing the

presence of a few infringing products, and has also demonstrated the presence of a substantial

number of Samsung Wireless products with the infringing BCD chips in Delaware [Compton

Decl. ¶ 2-13; Pollack Decl. ¶¶ 2-3 and Ex. A] and set forth competent evidence of BCD's intent

to do business in Delaware through established distribution channels, work with numerous

household-name electronics companies, including Dell, Hewlett Packard, and ViewSonic,

marketing efforts (including online sales and service), and efforts to secure capital.[9]  [Exs. D, I,

N, O.]  As such, BCD's conduct more than satisfies the Delaware long-arm statute.

> **b.    BCD incorrectly relies on the *Siemens* decision, whereas the more relevant authorities demonstrate that this Court has personal jurisdiction over BCD**

In its Opening Brief, BCD states that there is no basis for assertion of personal

jurisdiction based on a stream of commerce theory under either § 3104(c)(1) or § 3104(c)(4),

relying on a single case in support of both positions: *Siemens Aktiengesellschaft v. LG Semicon

Co., Ltd.*, 69 F. Supp. 2d 622 (D. Del. 1999).  Contrary to BCD's assertions, *Siemens* is not

dispositive.

First, as noted above, BCD ignores the *Philips* decision finding the exercise of personal

jurisdiction to be proper over a manufacturer of subcomponents for goods consumed in Delaware

through established distribution channels.  *See Philips Elecs. N. Am. Corp. v. Contec Corp.*, 2004

WL 503602, at *3 (D. Del. Mar. 11, 2004) (declining to accept the argument that the defendant

"merely had a general plan to serve the national market and that its activities were not directed

specifically toward Delaware" because the patentee presented competent evidence of an

---

[9]    BCD is seeking capital from everyone in the U.S., including Delaware residents, and its electronic road show is available on the web, including in Delaware.  Compton Decl. ¶ 20. Discovery is also likely to show additional direct contacts with Delaware residents or corporations that have been solicited in connection with the IPO.

established distribution channel and "that the accused [devices] are present in Delaware in large numbers . . .."). BCD also ignores numerous more recent opinions of this Court finding personal jurisdiction under a stream of commerce theory, including decisions that reached the opposite conclusion of the *Siemens* Court on substantially the same facts presented here – where infringing devices were shipped into Delaware as components of other products. *See In re Elonex Phase II Power Mgmt. Litig.*, 2003 WL 21026758 (D. Del. May 6, 2003); *Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349 (D. Del. 1999). *See also Energy Transp. Group, Inc. v. William Demant Holding A/S*, 2008 WL 78748 (D. Del. Jan. 4, 2008); *Padcom, Inc. v. NetMotion Wireless, Inc.*, 2004 WL 1192641 (D. Del. May 24, 2004).

Second, in relying solely on *Siemens* as supposedly setting forth the "law of the district" (while ignoring substantial counter-precedent), BCD fails to support its position with opinions from any Delaware state court, to which this Court defers in interpreting the Delaware long-arm statute. *See Intel v. Broadcom*, 167 F. Supp. 2d at 700. In effect, BCD offers a single district court holding as a surrogate for what is at bottom a state law analysis. Consequently, BCD fails to account for the consistent Delaware state court jurisprudence showing that the broadest application of § 3104(c) permitted by the statutory language is the proper application.

In addition to the Delaware Supreme Court's holding in *Hercules* and *LaNuova* cited above, state court decisions after *Siemens* have continued to interpret the Delaware long-arm statute as encompassing any activity that plausibly comes within the language of the statute. The most recent state court opinion to address the issue, *Sample v. Morgan*, emphasized:

> The Delaware Supreme Court has made clear that trial courts must give a broad reading to the terms of the long-arm statute, in order to effectuate the statute's intent to ensure that this state's court may exercise jurisdiction to the full limits permissible under the Due Process Clause. In other words, the Supreme Court

14

> has instructed that trial courts should permit service under § 3104 if the statutory language plausibly permits service, and rely upon a Due Process analysis to screen out uses of the statute that sweep too broadly.

935 A.2d 1046, 1056 (Del. Ch. 2007) (citing *Hercules*, 611 A.2d at 480-1). *See also Chandler v. Ciccoricco*, 2003 WL 21040185, at *10-11 (Del. Ch. May 5, 2003) ("Under [the *Hercules*] mandate, my task should be to give the words of the statute a liberal construction and to conclude that [activity in Delaware] is a transaction of business if that can be reasonably done. Any problems of overbreadth by such a liberal construction can be policed by application of the minimum contacts analysis under the due process clause of the Fourteenth Amendment."); *cf. Assist Stock Mgmt. L.L.C. v. Rosheim*, 753 A.2d 974, 980 (Del. Ch. 2000) (advocating the use of the due process analysis as the proper way to guard against a potentially overbroad application of a jurisdictional statute's terms).

In applying this liberal interpretation of the Delaware long arm statute, Delaware courts have repeatedly found the exercise of personal jurisdiction over companies like BCD to be proper under a stream of commerce analysis. *See Boone*, 724 A.2d at 1156-58, *aff'd*, 707 A.2d 765; *Wright v. Am. Home Prods. Corp.*, 768 A.2d 518, 531 (Del. Super. 2000). The *Boone* Court held that analysis of long-arm jurisdiction under a stream of commerce theory involves the interplay between specific jurisdiction provided under § 3104(c)(1) and general jurisdiction provided under § 3104(c)(4), which differs from analysis under either subsection in isolation:

> [O]ne must take great care not to overemphasize §§ 3104(c)(1) or (c)(4) under this analysis. It is not important that the indicia of activity under § 3104(c)(4) rise to a level of "general presence" as usually required. Instead, the enumerated activities in this section should be analyzed to determine whether there is an intent or purpose on the part of the manufacturer to serve the Delaware market with its product. Likewise, when analyzing § 3104(c)(1) it is not important that the manufacturer itself act in Delaware. Instead, if the intent or purpose on behalf of

the manufacturer to serve the Delaware market results in the introduction of the
product to this State and plaintiff's cause of action arises from injuries caused by
that product, this section is satisfied.

724 A.2d at 1158.

Under this analysis, the *Boone* Court found a proper basis for exercise of personal

jurisdiction over a Finnish asbestos manufacturer by virtue of its relationship with a U.S.

distributor over which the Finnish corporation had no control. *Id.* at 1154. The distributor sold

the Finnish corporation's asbestos to approximately ten customers in the United States, including

two customers in Delaware. *Id.* The *Boone* Court held that the Finnish corporation exhibited an

intent and purpose to serve the Delaware market implicitly through its agreement with the

distributor to solicit business from the United States as a whole, including Delaware. *Id.* at 1158.

The *Boone* Court also found that the Finnish corporation "derived substantial revenue

from Delaware and engaged in a persistent course of conduct in this State." *Id.* The Court's

conclusion regarding "substantial revenue" does not rely on comparison of revenue derived from

Delaware with revenue derived from the United States as a whole, or with the corporation's total

revenue. The Court simply acknowledges that the corporation earned at least $270,000 from its

Delaware sales. *Id.* *Cf. Beverly Hills Fan*, 21 F.3d 1571 ("It can be inferred from plaintiff's

allegations that defendants, by making through distribution channels ongoing and continuous

shipments into [the forum], have derived substantial revenue, at least in absolute terms, from

sales in [the forum]. Although it is uncertain whether these sales have been substantial in

percentage terms, the statute does not require that.").

The *Wright* Court similarly applied the stream of commerce analysis articulated in

*Boone*, finding proper the exercise of personal jurisdiction over French defendants who granted

licenses to several U.S. entities to manufacture diet pills. 768 A.2d at 529. The Court found

that, although the French defendants did not manufacture anything, the diet pills were only

manufactured because the French defendants granted licenses to manufacture them. *Id.* at 533.

The French defendants employed an exclusive U.S. distributor in an open, direct, intentional, and

planned effort to penetrate the U.S. market for diet pills. *Id.* The U.S. distributor's activities

were unrestricted, and no state was excluded. *Id.* The Court concluded that jurisdiction under §§

3401(c)(1) and (c)(4) was proper given the French defendants' effort to bring their diet pills to

the U.S. market, including Delaware, which was not limited to only isolated and random sales.

*Id.* at 531.

The *Wright* Court expanded upon the *Boone* analysis in two important ways. First,

although the Court did not expressly address "substantial revenue," it impliedly based its grant of

jurisdiction on a finding of substantiality in absolute terms, extrapolated from the number of

transactions as opposed to the percentage of total sales attributable to Delaware. The Court

referred to sales figures showing 22,191 prescriptions written for the French defendants' diet

pills in Delaware, which represented only 0.19% of all U.S. sales. 768 A.2d at 529. The Court

reasoned "[a]dmittedly, [22,191 sales] pales in significance in the same . . . period for all of U.S.

prescriptions, 11,584,797. But, the prescription figures for Delaware show far more than two or

so transactions such as in *LaNuova*." *Id.* at 530 (citing the Delaware Supreme Court's finding of

personal jurisdiction in *LaNuova*, 513 A.2d 764).

Second, the *Wright* Court emphasized the importance of proving actual sales and

presence of products in Delaware to establish grounds for personal jurisdiction. The *Wright*

Court distinguished this Court's denial of personal jurisdiction in *Intel v. Silicon Storage Tech.*,

20 F. Supp. 2d 690, noting that in that case there was no evidence of sales of infringing products

in Delaware prior to the filing of suit. 768 A.2d at 530-31. The facts at issue in *Wright* were

distinguishable—although the French defendants had no other known contacts with Delaware,

they were nevertheless subject to personal jurisdiction because the diet pills whose manufacture

they licensed were proven to have been sold in Delaware (sales from which the French

defendants derived revenue) on more than an isolated or random basis. *Id.* at 531. *Philips* and

the other more recent district court cases finding personal jurisdiction over foreign defendants,

noted above, are thus consistent with the *Hercules*, *Boone*, and *Wright* Courts' application of the

Delaware long arm statute in finding personal jurisdiction.

In short, BCD's reliance on *Siemens* is misplaced, because the *Siemens* Court did not

construe § 3104(c) broadly "to confer jurisdiction to the maximum extent possible" as required

under *Hercules* and *LaNuova*.[10]  *Hercules Inc.*, 611 A.2d at 480-81. *See also Mobil Oil Corp. v.*

*Advanced Envtl. Recycling Techs., Inc.*, 833 F. Supp. 437, 442 (D. Del. 1993) (declining to adopt

a jurisdictional theory that would require the Delaware long-arm statute to be construed more

restrictively than federal due process, noting that "[s]uch a construction would run counter to the

expansive interpretation that Delaware courts have consistently applied to Delaware's long-arm

statute."). For all of these reasons, BCD's reliance on *Siemens* to defeat personal jurisdiction

under § 3104(c) is improper, and the Court should reject BCD's efforts to misconstrue the law.

Consistent with the broad application of § 3104(c) required under *Hercules*, BCD is

subject to personal jurisdiction under §§ 3104(c)(1) and (c)(4) of the Delaware long-arm statute

under the stream of commerce analysis articulated in *Boone*, *Wright*, *Philips*, and *Chi Mei*.

Power Integrations has provided substantial evidence that BCD has placed its infringing products

into a stream of commerce that has resulted in their sale in Delaware. BCD has taken advantage

---

[10]  The *Siemens* Court also dispensed with the due process analysis, which, as noted above, should be the safeguard against overbroad application of the long-arm statute under current Delaware state case law.

of Samsung's established distribution channels with the specific intent to serve the Delaware

market. BCD's intent and purpose to serve the Delaware market is implicit in its supply of

infringing products into distribution channels that ship products throughout the United States,

including Delaware. BCD's sale of infringing products and its extensive business dealings with

Delaware corporations are part of a consistent course of conduct in Delaware, and BCD has

derived substantial revenue from its sales in Delaware. Interpreting § 3104(c) broadly "to

provide jurisdiction to the maximum extent possible," as required under *Hercules*, these acts

certainly fall within the scope of the language of § 3104(c)(1) as "transact[ing] any business . . .

in the State." Likewise, BCD's acts also fall within the scope of the language of § 3104(c)(4) as

"regularly do[ing] or solicit[ing] business [or] engage[ing] in any other persistent course of

conduct in the State." Accordingly, BCD is subject to long-arm jurisdiction in Delaware.

> **2.     The Exercise of Personal Jurisdiction over BCD Comports with Due Process.**

The exercise of personal jurisdiction over BCD also comports with Due Process.

Compliance with constitutional due process requires: 1) that a defendant have purposeful

minimum contacts with the forum, and 2) that maintenance of suit not offend traditional notions

of fair play and substantial justice. *Beverly Hills Fan Co.*, 21 F.3d at 1565 (citations omitted).

BCD's actions more than adequately justify the exercise of personal jurisdiction on both

accounts.

> **a.     BCD Has Purposeful Minimum Contacts With Delaware.**

In its Opening Brief, BCD's sole argument with respect to a lack of minimum contacts

with Delaware is that Power Integrations cannot demonstrate general or specific jurisdiction.

[D.I. 11 at 12.] As discussed in great detail above, though, both the specific jurisdiction

provision of § 3104(c)(1) and the general jurisdiction provision of § 3104(c)(4) apply to BCD,

and BCD's terse argument with respect to minimum contacts must be rejected.

More importantly, BCD's argument completely ignores controlling Federal Circuit

precedent applying the stream of commerce theory and finding that placing infringing products

into an established distribution channel — like BCD's use of the distribution channel for

Samsung cell phones and cell phone chargers — constitutes purposeful minimum contacts

sufficient to support personal jurisdiction.  For example, the *Beverly Hills Fan* Court noted "[t]he

allegations are that defendants purposefully shipped the accused fan into [the forum state]

through an established distribution channel.  The cause of action for patent infringement is

alleged to arise out of these activities.  No more is usually required to establish specific

jurisdiction." 21 F.3d at 1565.  The same facts are fully applicable to BCD here, and

accordingly, BCD's purposeful minimum contacts with Delaware have been established.

The *Beverly Hills Fan* Court's minimum contacts analysis included discussion of the

Supreme Court split regarding the sufficiency of minimum contacts established through

operation of a stream of commerce in *Asahi*. *Id.* at 1566.  Notably, the *Beverly Hills Fan* Court

concluded that placement of infringing products into the stream of commerce through an

established distribution channel satisfies both Justice Brennan's view, which requires only that

the stream of commerce be a "regular and anticipated flow of products from manufacture to

distribution to retail sale," and Justice O'Connor's view, which requires a showing of additional

conduct directed toward the forum.  *Id.*  On the facts presented, the Court found that both stream

of commerce theories are satisfied where "defendants, acting in consort, placed the accused

[product] in the stream of commerce, they knew the likely destination of the products, and their

conduct and connections with the forum state were such that they should reasonably have

anticipated being brought into court there." *Id.* Power Integrations has made the same showing, sufficient to satisfy both the Justice Brennan and Justice O'Connor's theories of personal jurisdiction, and accordingly, BCD's motion to dismiss should be denied.

This case is also directly analogous to *Chi Mei* and *Philips*, cases BCD ignores completely. As noted above, the Federal Circuit in *Chi Mei* found that the evidence suggesting the defendant derived substantial revenue from goods incorporating the infringing subcomponents in Delaware, coupled with the prima facie case of the use of established distribution channels for the products in Delaware, satisfied at least Justice Brennan's test for stream of commerce personal jurisdiction, and remanded the case to allow jurisdictional discovery relevant to the O'Connor standard. 395 F.3d at 1320, 1323. The *Philips* Court similarly found that competent evidence of the infringing devices incorporated into larger electronics goods sold in Delaware in large quantities satisfied the Delaware long arm statute in view of the evidence of an established distribution channel through which the finished products were sold in Delaware. 2004 WL 503602, at *4-5.

Here, Power Integrations has already presented more evidence linking BCD to Delaware than in either *Chi Mei* or *Philips.* In addition to locating a significant number of infringing BCD chips in products sold in Delaware both pre- and post-filing, Power Integrations has provided BCD's own documentation, which shows BCD has more distributors in North America than anywhere else in the world. [Ex. O (BCD Company Profile) at 4.] It defies logic to suggest that one of those distributors does not cover Delaware, and BCD does not aver that Delaware is excluded from its North American distribution channel. Power Integrations has also presented substantial evidence that BCD uses the established distribution network for Samsung cell phones and cell phone chargers to provide vast quantities of infringing chips in finished goods in

Delaware - far more than the relatively low threshold found sufficient for personal jurisdiction in *Philips* and *Chi Mei*. [Compton Decl. ¶¶ 2-13 and Exs. A-D.] These products are available in Delaware through both local retailers and via Samsung's website [*id.*], and BCD derives substantial revenue from the sales of downstream products in Delaware.

Furthermore, BCD is in the process of attempting to sell securities throughout the United States, and BCD's IPO road show is available on the web and is directed at the entire U.S. market, including Delaware, in an effort to raise funds. [Compton Decl. ¶ 20.] In addition to documenting BCD's relationship with Samsung as detailed above, BCD's own documents related to its efforts to raise capital reflect substantial business dealings with household-name electronics companies such as Dell and Hewlett Packard. [Ex. N (BCD-UBS presentation) at 3.] BCD also sent a partner from one of the world's largest intellectual property law firms to Delaware for a week to watch Power Integrations' recent jury trial with Fairchild Semiconductor relating to two of the patents-in-suit [D.I. 14 (Decl. of Howard Pollack) at ¶ 2], demonstrating that BCD reasonably anticipated being sued here in Delaware as well. In light of these substantial contacts with the State of Delaware, the Court's exercise of jurisdiction is entirely proper.[11]

**b.     The Exercise of Personal Jurisdiction Over BCD Will Not Offend Traditional Notions of Fair Play and Substantial Justice.**

In its Opening Brief, BCD argues that it would be inherently unfair to subject BCD to the jurisdiction of this Court because it has only two employees in California, and that Delaware has

---

[11]     As noted further below, if the Court is not yet satisfied that Power Integrations has met its burden, Power Integrations believes that a brief period of jurisdictional discovery will provide more than enough evidence to satisfy even the most stringent application of the stream of commerce theory, and therefore requests permission to conduct such discovery.

no interest in resolving this patent infringement lawsuit. [D.I. 11 at 12-13.] Both arguments are unavailing to defeat personal jurisdiction.

As an initial matter, Power Integrations has already demonstrated that BCD is both subject to Delaware's long-arm jurisdiction and has sufficient purposeful minimum contacts with Delaware to support this Court's exercise of personal jurisdiction. "[C]ases are rare in which minimum requirements in the concept of fair play and substantial justice defeat the reasonableness of jurisdiction even though the defendant has purposefully engaged in forum activities." *M & L*, 2004 WL 2370708, at *3 (internal quotations omitted). This is not such a case.

BCD's contention regarding the burden of litigating this case in Delaware is meritless. Purposeful minimum contacts satisfy the requirements of due process under a stream of commerce theory when an accused infringer is shown to have purposefully shipped infringing products into the forum through an established distribution channel. *Beverly Hills Fan*, 21 F.3d at 1565 ("[D]efendants purposefully shipped the accused [product] into [the forum state] through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction."). Similarly, purposeful minimum contacts may be shown where an infringer ships infringing products, through distributors, into the forum as part of a general business plan to solicit business and deliver products to customers. *See Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 821 F. Supp. 272, 274 (D. Del. 1993) ("The solicitation of business in Delaware in conjunction with the distribution of products in Delaware demonstrates [infringer's] purposeful availment of the protection of Delaware law."). Here, Power Integrations has already presented several examples of BCD conducting business with Delaware corporations and shipping significant volumes of

infringing chips into Delaware through established distribution channels. As such, the exercise of personal jurisdiction will comport with Due Process requirements.

The Federal Circuit has consistently declined to find a lack of jurisdiction on grounds of undue burden merely because a defendant is a foreign corporation. *See, e.g. Beverly Hills Fan*, 21 F.3d at 1569-70 (finding the burden on a Chinese infringer of traveling from China to the United States and submitting itself to the U.S. judicial system insufficient to outweigh the patentee's interests, noting that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome"). Indeed, BCD admits that this case should proceed in some United States District Court, and because only two of BCD's employees reside in California (the rest reside in China), it is difficult to see how litigating in Delaware will be substantially more burdensome than litigating in California. Equally important is the fact that BCD sent counsel to monitor a different Power Integrations lawsuit regarding two of the three patents-in-suit in this very Court [D.I. 14 (Pollack Decl.) at ¶ 2.], and six of the seven attorneys listed as counsel for BCD on the motion to dismiss are based on the East Coast (two in Washington, D.C., one in Reston, VA, and three in Wilmington, DE). Moreover, BCD's current efforts to raise $75,000,000 in a U.S. IPO with New York-based investment banks demonstrates that BCD can and does in fact travel to the East Coast to conduct business on a regular basis, including to orchestrate its access to U.S. capital markets. Given the overwhelming presence of BCD's counsel and contacts on the East Coast, it strains credulity to suggest it will be so much easier to litigate in California that proceeding in Delaware somehow violates BCD's Due Process rights.

BCD's contention regarding Delaware's interest in resolving this dispute is similarly meritless. Delaware's interest in this dispute is significant. Power Integrations is a Delaware

corporation, and Delaware has an abiding interest in protecting the property rights of its corporate citizens, including patent rights such as those at issue in this action. *See Philips*, 2004 WL 503602, at *5. Delaware also has an interest in discouraging injuries that occur within the state, including injuries caused by patent infringement. *See Energy Transp. Group, Inc. v. William Demant Holding A/S*, 2008 WL 78748 (D. Del. Jan. 4, 2008).

Even more generally, as the Federal Circuit has recognized, "[t]hat it is to plaintiff's advantage to adjudicate the dispute in the district court [of a specific district] does not militate against its right to have access to that court. . . . The fact that it has unique attributes of which plaintiff apparently has an interest in taking advantage does not change the case." *Beverly Hills Fan*, 21 F.3d at 1568-69. Power Integrations hopes to take advantage of this Court's comparatively short time to trial and this Court's extensive knowledge of and experience with the asserted patents and the underlying technology. Both parties will benefit from expedient and efficient resolution of this suit, and Power Integrations will benefit from the prompt vindication of its patent rights. That BCD would prefer to try this case in a congested court, before a judge having no prior experience with this technology or these patents, does nothing to tip the balance against Power Integrations' preference for this first-filed action. Accordingly, BCD's motion to dismiss should be denied.

> **B.     If the Court Is Unable to Find Personal Jurisdiction at this Juncture, Power Integrations Should Be Permitted to Take Jurisdictional Discovery.**

When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a prima facie case, with the record viewed in the light most favorable to the plaintiff. *M & L*, 2004 WL 2370708, at *2. Although discovery has not yet commenced in this action, Power Integrations has presented sufficient evidence to show that this Court has personal jurisdiction over BCD, and the Court should accordingly deny BCD's motion to dismiss.

However, if the Court does not agree that Power Integrations has carried its burden, the Court should permit Power Integrations to conduct jurisdictional discovery before ruling on BCD's motion to dismiss.

Jurisdictional discovery is of particular relevance and should be granted where a plaintiff has made a sufficient threshold showing, as Power Integrations has done here. *See Chi Mei*, 395 F.3d at 1323 (vacating dismissal of patent infringement action for lack of personal jurisdiction and remanding for jurisdictional discovery, noting "[patentee] has gone beyond factual allegations, and has already made a prima facie case for [defendant's] use of an established distribution network that likely results in substantial sales of its products in Delaware.") Power Integrations' showing in this case is at least as sufficient as that found to warrant jurisdictional discovery by the *Chi Mei* Court. 395 F.3d at 1323. Accordingly, should the Court conclude that Power Integrations has not yet carried its burden of showing a basis for personal jurisdiction over BCD, the Court should permit Power Integrations to conduct jurisdictional discovery before ruling on BCD's motion to dismiss such discovery would permit Power Integrations to further demonstrate BCD's knowledge and intent to serve Delaware market, the extent and nature of BCD's contacts with Delaware residents and corporations (including BCD's use of established distribution networks), and the full scope of BCD's infringement in this district.[12]

---

[12] BCD's documents reflecting the use of its infringing AP3700 chips in desktop computers, portable DVD players, and set top boxes, along with its statements that companies like Dell, Hewlett Packard, Sony, and Panasonic are "key" customers, suggest that BCD's infringement in this District is not limited to the sales Power Integrations has already demonstrated with respect to Samsung cell phone chargers. *See* Exs. P-S, Ex. N at 3.

## V.    CONCLUSION

The Court should find that Power Integrations has carried its burden of showing a basis for personal jurisdiction over BCD, and BCD's motion to dismiss should be denied.  However, if the Court does not agree that Power Integrations has carried its burden, the Court should permit Power Integrations to conduct jurisdictional discovery before ruling on BCD's motion to dismiss.


Dated:  February 6, 2008                FISH & RICHARDSON P.C.

                                        By:    */s/ Kyle Wagner Compton*
                                                William J. Marsden, Jr. (#2247)
                                                Kyle Wagner Compton (#4693)
                                                919 N. Market Street, Suite 1100
                                                P.O. Box 1114
                                                Wilmington, DE  19801
                                                Telephone: (302) 652-5070
                                                Facsimile:  (302) 652-0607
                                                Email:  marsden@fr.com
                                                Email:  kcompton@fr.com

                                                Frank E. Scherkenbach
                                                FISH & RICHARDSON P.C.
                                                225 Franklin Street
                                                Boston, MA 02110-2804
                                                Telephone: (617) 542-5070
                                                Facsimile:  (617) 542-8906

                                                Howard G. Pollack
                                                Michael R. Headley
                                                FISH & RICHARDSON P.C.
                                                500 Arguello Street, Suite 500
                                                Redwood City, CA 94063
                                                Telephone: (650) 839-5070
                                                Facsimile:  (650) 839-5071

                                        ATTORNEYS FOR PLAINTIFF
                                        **POWER INTEGRATIONS, INC.**

27

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2008, I electronically filed the attached **POWER INTEGRATIONS, INC.'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following, who was also served via hand delivery:

| | |
|---|---|
| Steven J. Balick | Attorneys for Defendants |
| John G. Day | BCD SEMICONDUCTOR |
| Tiffany Geyer Lydon | CORPORATION and SHANGHAI |
| Ashby & Geddes | SIM-BCD SEMICONDUCTOR |
| 500 Delaware Avenue, 17th Floor | MANUFACTURING, CO., LTD |
| Wilmington, DE 19899 | |

I also certify that on February 6, 2008, I sent the document to the following individuals via electronic and first class mail:

| | |
|---|---|
| E. Robert Yoches | Attorneys for Defendants |
| Joyce Craig | BCD SEMICONDUCTOR |
| Finnegan, Henderson, Farabow, Garrett & | CORPORATION and SHANGHAI |
| Dunner, L.L.P. | SIM-BCD SEMICONDUCTOR |
| 901 New York Avenue, NW | MANUFACTURING, CO., LTD |
| Washington, DC 20001-4413 | |

| | |
|---|---|
| Erik R. Puknys | Attorneys for Defendants |
| Finnegan, Henderson, Farabow, Garrett & | BCD SEMICONDUCTOR |
| Dunner LLP | CORPORATION and SHANGHAI |
| Stanford Research Park | SIM-BCD SEMICONDUCTOR |
| 3300 Hillview Avenue | MANUFACTURING, CO., LTD |
| Palo Alto, CA 94304-1203 | |

| | |
|---|---|
| Robert L. Burns | Attorneys for Defendants |
| Finnegan, Henderson, Farabow, Garrett & | BCD SEMICONDUCTOR |
| Dunner LLP | CORPORATION and SHANGHAI |
| Two Freedom Square | SIM-BCD SEMICONDUCTOR |
| 11955 Freedom Drive | MANUFACTURING, CO., LTD |
| Reston, VA 20190-5675 | |

/s/ Kyle Wagner Compton
Kyle Wagner Compton