## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,       )
                                )
        Plaintiff,           )
                                )
v.                              )    C.A. No. 07-633-JJF-LPS
                                )
BCD SEMICONDUCTOR        )    **REDACTED**
CORPORATION and SHANGHAI    )    **PUBLIC VERSION**
SIM-BCD SEMICONDUCTOR     )
MANUFACTURING CO., LTD.,     )
                                )
        Defendants.      )

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

*Of Counsel*:

E. Robert Yoches
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000

Robert L. Burns
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA 20190
(571) 203-2700

Erik R. Puknys
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
3300 Hillview Avenue
Palo Alto, CA 94304
(650) 849-6600

Dated: February 19, 2008

ASHBY & GEDDES
Steven Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*
*BCD Semiconductor*
*Corporation and Shanghai*
*SIM-BCD Semiconductor*
*Manufacturing, Co., Ltd.*

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................2

II.    FACTS ..............................................................................................................2

III.   ARGUMENT.....................................................................................................6

      A.    The Delaware Long-Arm Statute Does Not Confer Jurisdiction Over
            Defendants SIM-BCD and BCD California ...............................................6

            1.    SIM-BCD's Sales of Subcomponents in China Do Not Satisfy the
                    "Transacting Business" in Delaware Provision of § 3104(c)(1).................6

## REDACTED

            3.    *Siemens* Shows That No Personal Jurisdiction Attaches in
                    Delaware for SIM-BCD and BCD California............................................10

      B.    Exercising Jurisdiction in Delaware Over Defendants SIM-BCD and BCD
            California Would Contravene Due Process ...............................................12

            1.    The Reasoning in *Asahi* Makes the Exercise of Personal
                    Jurisdiction in This Case Violative of Due Process.....................12

            2.    The Federal Circuit's Holding in *Beverly Hills Fan* Does Not
                    Support Exercising Personal Jurisdiction. ..................................14

            3.    The Exercise of Jurisdiction Would Offend the Notions of Fair
                    Play and Substantial Justice. .....................................................16

      C.    PI Has Not Justified Any Additional Discovery on Jurisdiction ...........17

IV.   CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*American Bio Medica Corp. v. Peninsula Drug Analysis Co.,*
  No. Civ.A. 99-218, 1999 WL 615175 (D. Del. Aug. 3, 1999) ............................................... 15

*Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102 (1987)............................................ *passim*

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
  21 F.3d 1558, 1569 (Fed. Cir. 1994)........................................................... 6, 13, 14, 15

*Boone v. Oy Partek Ab,* 724 A.2d 1150 (Del. Super. Ct. 1997) ........................................... 7, 8, 10

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,*
  395 F.3d 1315 (Fed. Cir. 2005)................................................................. 6, 8, 17

*Energy Transportation Group, Inc. v. William Demant Holding A/S,*
  No. C.A. 05-422, 2008 WL 78748 (D. Del. Jan. 4, 2008) ........................................ 9

*ICT Pharmaceuticals, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.,*
  147 F. Supp. 2d 268 (D. Del. 2001) ................................................................. 7

*In re Elonex Phase II Power Management Litigation,*
  No. 01-082, 2003 WL 21026758 (D. Del. May 6, 2003) ........................................... 8

*Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F. Supp. 2d 690 (D. Del. 1998) ............................ 17

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945) .................................................. 12, 16

*LaNuova D & B, S.p.A. v. Bowe Co.,* 513 A.2d 764 (Del. 1986) ................................................ 11

*M&M Technologies, Inc. v. Gurtler Chemicals, Inc.,*
  No. Civ.A. 03-994, 2005 WL 293509 (D. Del. Feb. 8, 2005) ........................................ 11, 15

*Marston v. L.E. Gant,* 351 F. Supp. 1122 (E.D. Va. 1972) ..................................................... 14, 15

*Mellon Bank (East) PSFS, National Association v. Farino,* 960 F.2d 1217 (3rd Cir. 1992) ....... 18

*Motorola, Inc. v. PC-Tel, Inc.,* 58 F. Supp. 2d 349 (D. Del. 1999) ............................................ 9

*Padcom, Inc. v. NetMotion Wireless, Inc.,*
  No. Civ. 03-983, 2004 WL 1192641 (D. Del. May 24, 2004)...................................... 9

*Philips Electronics North America Corp. v. Contec Corp.,*
  No. Civ.A. 02-123, 2004 WL 503602 (D. Del. Mar. 11, 2004) ................................... 6, 7

*Siemens Aktiengesellschaft v. LG Semicon Co.*, 69 F. Supp. 2d 622 (D. Del. 1999) ......... 7, 10, 11

*Wright v. American Home Products Corp.*, 768 A.2d 518 (Del. Super. Ct. 2000) ....................... 7

## I.     INTRODUCTION

If the Court accepts jurisdiction in this case, then there will be virtually no situation that falls outside the Delaware long-arm statute.

**REDACTED**

PI uses innuendo and misstatements to contort this nonexistent contact into continuous and substantial activity in Delaware.  No court has ever held that such an insubstantial and remote link could support a finding of jurisdiction.  This Court should not do so now.

## II.     FACTS

From the first sentence in its Opposition Brief, PI repeatedly misstates that "BCD's infringing products are being sold in Delaware."  (D.I. 31 (PI's Br. in Opp.) ("PI Opp. Br.") at 2.)

**REDACTED**

**REDACTED** At best, the accused AP3700 chips[1] are one of many parts of cell-phone battery chargers that someone other than Defendants allegedly sell in Delaware.

**REDACTED**

Somehow, the chargers may make their way into the United States, but SIM-BCD and BCD California have nothing to do with this activity.

PI erroneously charges that AP3700 chips are being sold in Delaware through an "established distribution channel." (PI Opp. Br. at 2.) The documents PI cites identify Future Electronics Inc., a worldwide distributor of electronic components, as that channel. (D.I. 34 (Decl. of Kyle Wagner Compton) ("Compton Decl."), Ex. O (BCD Company Profile) at 5.) Future Electronics, however, is a Canadian company with no office in Delaware. *See* Future Electronics USA Branch Locations, http://www.futureelectronics.com/branches.asp?cont= North+America&val=USA (last visited February 19, 2008).  A search of the website for that

---

[1]  These chips, which are about the size of the nail of a little finger, are one small component among many used in a battery charging circuit for Samsung cell-phone sets. (D.I. 34, Ex. F at 8-9.)

**REDACTED**

3

company identifies only six SIM-BCD products.  *See* Future Electronics Component Super Store Search, http://www.componentsuperstore.com/store/SearchResultByCategoryFullText.aspx? Keywords=BCD&SearchType=Keywords (last visited February 19, 2008).  None of those products is the accused AP3700 chip.  *See id.*

**REDACTED**

Neither Samsung nor wireless retailers, such as the We'R Wireless store Mr. Hauck identifies (D.I. 18 (Decl. of Hauck) ¶ 2) distributes or sells the AP3700 chips.    **REDACTED**

SIM-BCD's ultimate and final customer for the AP3700 is Samsung, not consumers in Delaware.

**REDACTED**

Samsung sells its cell-phone sets around the world, with the US market representing less than 15% of its sales in the third quarter of 2007. *See* http://www.isuppli.com/news/default.asp?id=8771 (showing 42.6 million sales worldwide); Compton Decl. Ex. K (showing 6.1 million sales in the US).    **REDACTED**

---

**REDACTED**

REDACTED

REDACTED

## III.    ARGUMENT

### A.    The Delaware Long-Arm Statute Does Not Confer Jurisdiction Over Defendants SIM-BCD and BCD California

PI's stream-of-commerce theory fails to differentiate between customers of Defendants' AP3700 chips and customers of Samsung's cell-phone sets. Customers of Defendants' accused products are Asian distributors and manufacturers, while customers of Samsung's cell-phone sets are wireless retail stores and their consumers. PI grossly overstates the case by alleging that Defendants are "transacting business" or "regularly doing or soliciting business" in Delaware by taking "advantage of Samsung's established distribution channels" in Delaware. (PI Opp. Br. at 19.) Defendants have no distribution agreement with Samsung or any wireless retail stores.

#### 1.    SIM-BCD's Sales of Subcomponents in China Do Not Satisfy the "Transacting Business" in Delaware Provision of § 3104(c)(1).

PI relies on *Philips Electronics North America Corp. v. Contec Corp.*, No. Civ.A. 02-123, 2004 WL 503602 (D. Del. Mar. 11, 2004), for the proposition that personal jurisdiction can exist under § 3104(c)(1) for an "electronics subcomponent manufacturer" based on "plaintiff's evidence of large numbers of goods in Delaware and an established distribution channel for the finished goods serving the Delaware market." (PI Opp. Br. at 11.)[5]

Contrary to PI's representations, however, *Philips* recognized that jurisdiction in Delaware required more than proof the defendant's products were shipped into Delaware. "[I]n order to meet the requirements of § 3104(c)(1), Remote Solution's actions must be directed at residents of Delaware and the protection of Delaware laws." *Philips*, 2004 WL 503602, at *4.

---

[5] Neither of the two Federal Circuit decisions PI cites addresses § 3104(c)(1) of the Delaware long-arm statue. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), involves Virginia's long-arm statute, and *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1318-19 (Fed. Cir. 2005), involves only § 3104(c)(4).

The Court found that Remote Solution met this requirement in part because it knew its distributor, Contec (a Delaware corporation), sold its remote controls in Delaware. *Id.* Remote Solution also knew that Comcast—a major provider of cable television services in Delaware— was selling the accused remote controls. *Id.* at *2, 4. Further evidence that Remote Solution directed activities toward Delaware residents was its manufacture of remote controls for the Delaware-based Comcast with Comcast's logo. *Id.*

Moreover, the defendant in *Philips*, Remote Solution, was not an "electronic subcomponent manufacturer" like SIM-BCD.[6] Instead, it made remote controls, finished goods, that were distributed and sold to customers. *Philips*, 2004 WL 503602, at *3.

Also unhelpful to PI is its reliance on two product-liability decisions, *Boone v. Oy Partek Ab*, 724 A.2d 1150 (Del. Super. Ct. 1997), and *Wright v. American Home Products Corp.*, 768 A.2d 518 (Del. Super. Ct. 2000). Like *Philips*, both involve a manufacturer who partners with distributors that sell the allegedly infringing product directly to customers in Delaware. In *Boone*, the defendant Partek sold an asbestos product to an asbestos distributor who then sold the product directly to customers in Delaware. *Boone*, 724 A.2d at 1153. In *Wright*, the defendants licensed a diet pill to a drug distributor who then sold the product directly to consumers in Delaware. *Wright*, 768 A.2d at 520, 521, 527-28. All these cases show is that a manufacturer of an allegedly infringing product cannot escape personal jurisdiction by selling the product in Delaware indirectly through engaging a distributor or licensor. *See also ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 273-74 (D. Del. 2001). Defendants, however, have not done so.

---

[6] In addition, the remote controls were not incorporated as a subcomponent into any other product as SIM-BCD's chips are (and as the chips were in *Siemens Aktiengesellschaft v. LG Semicon Co.*, 69 F. Supp. 2d 622 (D. Del. 1999)).

**REDACTED**

Relying on *Commissariat A L'Energie Atomique,* PI also argues that § 3104(c)(4) supports jurisdiction because Defendants showed an "intent and purpose to serve the Delaware market" based on Defendants' "established distribution channel" through Samsung and the wireless retailers. (PI Opp. Br. at 11.) The Federal Circuit, however, rendered no decision on the merits of jurisdiction under § 3104(c)(4). *Commissariat A L'Energie Atomique*, 395 F.3d at 1318, 1324. The Federal Circuit instead pointed to the failure of the defendant to rebut the allegation that it had derived "substantial revenue" from the sales of liquid crystal displays in Delaware. *Id.*

In this case, on the other hand, Defendants strongly rebut such an allegation.

**REDACTED**

The cases PI cites for finding jurisdiction under this section involve sales of the accused product to Delaware customers by distributors of those products. In *Boone*, as explained above, the court found "an intent and purpose to serve the Delaware market" in part because the defendant engaged an asbestos distributor to be its exclusive distributor in the United States, who then solicited business in Delaware and sold the asbestos in Delaware for ten years. *Boone*, 724 A.2d at 1158. In *In re Elonex Phase II Power Management Litigation*, No. 01-082, 2003 WL 21026758 (D. Del. May 6, 2003), the defendant manufactured accused monitors and sold them to US monitor companies who resold the monitors directly to Delaware consumers. *Id.*

8

at *1. In *Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349 (D. Del. 1999), "all parties [including the defendant,] from the beginning to the end of the distribution network acting in consort," licensed the software directly to Delaware consumers, and the defendant received royalties for each license. *Id.* at 355. In *Energy Transportation Group, Inc. v. William Demant Holding A/S*, No. C.A. 05-422, 2008 WL 78748 (D. Del. Jan. 4, 2008), the defendant "acted in the consort with its subsidiaries" to distribute and sell the allegedly infringing products, hearing aids, directly to Delaware consumers. *Id.* at *4. Finally, in *Padcom, Inc. v. NetMotion Wireless, Inc.*, No. Civ. 03-983, 2004 WL 1192641 (D. Del. May 24, 2004), the defendant delivered the accused product to and communicated with a prospective customer in Delaware, contacted businesses in Delaware "to solicit business and purchases," selected seven entities in Delaware for a telemarketer to contact, and targeted eleven specific health care facilities in Delaware. *Id.* at *5-6.

In this case, on the other hand, Defendants have no connections with Delaware (indeed are several stages removed from any sales in Delaware), and have no control over where Samsung sells its phones. Nor can Samsung be considered a distributor of the AP3700 since it does not sell that chip. Unlike the defendants in the cases PI cited, Defendants in this case have no customers in Delaware for the accused product, nor have they solicited such customers. Thus, PI has shown no connection to or presence in Delaware by Defendants, and nothing close to "substantial and continuous activity" in Delaware that jurisdiction requires.

PI's allegations that Defendants have business dealings with companies incorporated in Delaware and that Defendants' website provides general information about AP3700 chips, also fail to establish jurisdiction. As explained above, Defendants have no dealings with those companies in Delaware, and the public cannot purchase the AP3700 from Defendants' website.

*See* BCD Semiconductor Manufacturing Ltd. Website, http://www.bcdsemi.com (showing online orders require username and password) (last visited February 19, 2008).

### 3. *Siemens* Shows That No Personal Jurisdiction Attaches in Delaware for SIM-BCD and BCD California.

*Siemens* is dispositive of the personal jurisdiction question in this case, as the facts in that case are indistinguishable from those in this case. In *Siemens,* the court held that § 3104(c)(1) is insufficient to confer specific jurisdiction on a defendant who merely sells chip subcomponents outside Delaware for use in electronic devices other manufacturers sold in Delaware through the stream of commerce. *Siemens*, 69 F. Supp. 2d at 627. Transferring title to subcomponents to a third party outside of Delaware does not constitute "transacting business" within the state under § 3104(c)(1). *Id.* at 625-26. The defendant in *Siemens*, as with SIM-BCD and BCD California, had not presented its subcomponents for sale to any customer in Delaware, nor had the defendant or its distributor sold any subcomponents to Delaware customers. *Id.* at 626. The sale of subcomponents outside Delaware to companies who use the chips in electronic devices available to Delaware consumers, was not "continuous and substantial" activity under § 3104(c)(4). *Id.* at 626-27.

The Court concluded that any revenues derived from those sales, which plaintiff estimated at $2,000,000 over the course of three years, were "too remote and insubstantial" to be "continuous and substantial" activity in the forum or to show an "'intent or purpose to serve the Delaware market with their product.'" *Id.* at 627 (quoting *Boone*, 724 A.2d at 1158).

### REDACTED

PI wrongly criticizes *Siemens* as failing "to construe § 3104(c) broadly 'to confer jurisdiction to the maximum extent possible.'" (PI Opp. Br. at 18.) To the contrary, *Siemens*

properly relied on Delaware Supreme Court precedent for that proposition, including the *LaNuova* case PI cites. *See Siemens*, 69 F. Supp. 2d at 625 ("The Delaware Supreme Court has stated that Delaware's long-arm statute should be 'broadly construed to confer jurisdiction to the maximum extent possible under the due process clause.'" (quoting *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986)[7]).[8]

Similarly to *Siemens*, this Court also refused to find personal jurisdiction against a subcomponent manufacturer in *M&M Technologies, Inc. v. Gurtler Chemicals, Inc.*, No. Civ.A. 03-994, 2005 WL 293509 (D. Del. Feb. 8, 2005). There, a third-party defendant ("Burlington") made and sold a chemical, Burcopel CAT, to third-party plaintiff ("Gurtler"), who diluted the chemical and sold the new product as its own. *Id.* at *1. The court found there was no jurisdiction against Burlington in Delaware under § 3104(c)(1) because title to the chemical passed to Gurtler outside of Delaware. *Id.* at *3. The court also found that Gurtler was not "acting as Burlington's distributor of Burcopel CAT" because Gurtler altered the product and sold the product under its own trademark. *Id.* And no jurisdiction lied under § 3104(c)(4) because Burlington did not regularly do or solicit business in Delaware based on many of the same facts present in this case. *Id.* at *4. The court found that Burlington's revenues derived from services or things used or consumed in Delaware, totaling about $1,000 per year, were not "substantial" because they totaled less than one percent of total revenue. *Id.* at *5 ("Delaware

---

[7] In *LaNuova*, the court found jurisdiction under § 3104(c)(4), due to the insured warranty program the defendant had with Delaware consumers. *LaNuova*, 513 A.2d at 769.
**REDACTED**

[8] PI also wrongly argues that the *Siemens* court erred when it "dispensed with the due process analysis." (PI Opp. Br. at 18 n.10.) Because the *Siemens* court found no Delaware long-arm jurisdiction, it did not need a due process analysis.

courts have broadly construed the term 'substantial revenue' to mean . . . two to three percent of total revenue." (citations omitted)).

**B.     Exercising Jurisdiction in Delaware Over Defendants SIM-BCD and BCD California Would Contravene Due Process**

**1.     The Reasoning in *Asahi* Makes the Exercise of Personal Jurisdiction in This Case Violative of Due Process.**

The exercise of personal jurisdiction consistent with due process requires "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the State*." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (plurality opinion) (citations omitted).

PI acknowledges *Asahi* as controlling precedent on the due process issue, but avoids any analysis of that decision. (*See* PI Opp. Br. at 20.) *Asahi* supports a finding that due process prohibits the exercise of personal jurisdiction in this case.

In *Asahi*, the Supreme Court confronted the stream-of-commerce issue as follows:

> This case presents the question whether the mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce constitutes minimum contacts between the defendant and the forum State such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

480 U.S. at 105 (internal quotation marks and citations omitted). The defendant manufactured tire valves in Japan and sold them to another company in Taiwan that used them as components in finished tire tubes, ultimately selling them in California. *Id.* The Supreme Court unanimously held that exercising jurisdiction over the defendant component manufacture in California

violated due process. *Id.* at 116.  Although the Justices were divided in their rationale and issued different opinions, Defendants prevail under either opinion.[9]  There is no significant difference between the defendant in *Asahi* and those in this case.

Justice O'Connor wrote, with three other Justices concurring, that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* at 112.  Applying Justice O'Connor's standard here requires a finding of no jurisdiction.

**REDACTED**

Even under Justice Brennan's more liberal view of minimum contacts, the same result ensues.  Defendants engage in no conduct directed toward Delaware.  PI argues, that, based on population data, 0.29% of Samsung telephones sold in the United States are sold in Delaware.

---

[9]  The Federal Circuit has not resolved the split in *Asahi*.  Rather, when seeking to determine whether the exercise of personal jurisdiction comports with the requirements of due process, the Federal Circuit applies both standards.  *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994).

(PI Opp. Br. at 5.)  Because less than 15% of Samsung cell-phone sales are in the United States, *see supra* Section II, Delaware represents less that 0.044% of Samsung's cell-phone sales (and presumably SIM-BCD's revenues from the sales of just the AP3700 product to Samsung).  This is a statistically insignificant economic benefit.  Moreover, the AP3700 travels through even more layers of different Asian companies than the defendant's product did in *Asahi*, *see Asahi*, 480 U.S. at 106, so the case for no due process is even stronger here.

**2.    The Federal Circuit's Holding in *Beverly Hills Fan* Does Not Support Exercising Personal Jurisdiction.**

In *Beverly Hills Fan*, a case PI relies on heavily, the defendant, Ultec Enterprises Co., manufactured allegedly infringing ceiling fans in Taiwan and sold them to a fan distributor, Royal Sovereign Corp.  21 F.3d at 1560.  Royal imported the fans and distributed them to a retailer in Virginia.  *Id.*  The court found that Royal had "ongoing relationships with Virginia retailers and customers," because there was "a manual accompanying the fan identif[ying] Royal as the source of the fan," and "the fan was accompanied by a warranty which Royal would honor."  *Id.* at 1560.  The Federal Circuit held that the exercise of jurisdiction against Ultec did not violate due process because: the "defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of their products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there."  *Id.* at 1566.

**REDACTED**

Indeed, *Beverly Hills Fan* used *Marston v. L.E. Gant*, 351 F. Supp. 1122 (E.D. Va. 1972), as an example of the

14

absence of an established distribution channel. *See Beverly Hills Fan Co.*, 21 F.3d at 1565 n.15.

In *Marston*, the defendant manufactured furniture in Japan and sold its products to Japanese

distributors, who in turn sold the furniture to distributors located around the world, who in turn

brought the accused infringing product into the forum state, Virginia. 351 F. Supp. at 1122.

According to the Federal Circuit, there was no Virginia jurisdiction in *Marston* because "there

was no such [established distribution] channel in place." *Beverly Hills Fan*, 21 F.3d 1566, n.15.


**REDACTED**


Moreover, in *American Bio Medica Corp. v. Peninsula Drug Analysis Co.*, No.

Civ.A. 99-218, 1999 WL 615175 (D. Del. Aug. 3, 1999), this Court distinguished *Beverly Hills*

*Fan* because there was no evidence that the manufacturer directed the distributors' sales efforts

at Delaware residents or of any ongoing relationships between the defendant, the defendants'

distributors, and Delaware residents. *Id.* at *5; *see also M&M Techs., Inc.*, 2005 WL 293509

(finding jurisdiction against a defendant subcomponent manufacturer of a chemical used in a

third party's product sold by another in Delaware through the stream of commerce violated the

Due Process Clause in which the defendant derived less than $1,000 in revenue).

---

[10] PI's other cases are inapt. *Commissariat A L'Energie Atomique* did not make a decision on the merits regarding due process, and, as explained above, the contacts with Delaware in *Philips* were much greater than this case.

3.    **The Exercise of Jurisdiction Would Offend the Notions of Fair
Play and Substantial Justice.**

The Due Process Clause forbids the exercise of personal jurisdiction over BCD under

circumstances that "would offend 'traditional notions of fair play and substantial justice.'"

*Asahi*, 480 U.S. at 113 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).  When determining the

reasonableness of the exercise of jurisdiction, the court must consider "the burden on the

defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief."  *Id.*

The court must also weigh "the interstate judicial system's interest in obtaining the most efficient

resolution of controversies; and the share interest of the several States in furthering fundamental

substantive social policies."  *Id.* (internal quotation marks omitted).  These factors reveal the

unreasonableness of exercising jurisdiction against the Defendants in this case.

As the Supreme Court stated in *Asahi*, "[t]he unique burdens placed upon one who must

defend oneself in a foreign legal system should have significant weight in assessing the

reasonableness of stretching the long arm of personal jurisdiction over national borders."  *Id.*

at 114.                                **REDACTED**

It would be a burden for either to travel to Delaware.

Moreover, while PI may be incorporated in Delaware, its principal place of business, as well as

the likely witnesses, are in California.  (Compl. ¶ 1.)

Moreover, Plaintiff and Delaware's interest in the assertion of jurisdiction in Delaware is

substantially diminished by Plaintiff's prior filing of its lawsuit in California, and Defendants'

consent to jurisdiction in California.  Indeed, the only reason Plaintiff moved the case was to

gain a tactical advantage after receiving a favorable jury verdict in this court in a related case.

> [T]he Federal interest in Government's foreign relations policies will be best
> served by a careful inquiry into the reasonableness of the assertion of jurisdiction
> in the particular case, and an unwillingness to find the serious burdens on an alien
> defendant outweighed by minimal interests on the part of the plaintiff or the

16

forum State. Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."

*Asahi*, 480 U.S. at 115. Accordingly, it would be manifestly unjust to exercise jurisdiction in Delaware against Defendants in this case.

PI raises Defendants' IPO activities in support of jurisdiction, however, besides the fact those activities occurred well after the complaint was filed and therefore carry no weight in resolving the personal jurisdiction question, nothing mentioned by PI shows any action on the part of Defendants being directed toward Delaware. *See Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690 (D. Del. 1998) ("The court cannot base jurisdiction on events that occurred after the filing of [plaintiff]'s complaint.").

**REDACTED**

**C.    PI Has Not Justified Any Additional Discovery on Jurisdiction**

PI has not established a prima facie case for BCD's "use of an established distribution network that likely results in substantial sales of its products in Delaware." *Commissariat A L'Energie Atomique*, 395 F.3d at 1323.

**REDACTED**

---

[11] PI, with some desperation, notes that an attorney for the Defendants attended PI's validity trial against Fairchild. Since that September 2007 trial involved two of the patents-in-suit in this case, and since the California case had been pending for three months, such attendance was mere prudence and not, by any stretch of the imagination, some recognition by the Defendants that PI would dismiss the California action and file suit in Delaware after obtaining a favorable verdict.

**REDACTED**

Although PI asks for additional discovery, it does not even suggest what additional discovery it would perform. *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3rd Cir. 1992) (finding that plaintiff must establish sufficient contacts between the defendant and the forum state with "reasonable particularly"). It is entitled to none.

IV.   **CONCLUSION**

PI has played games jumping from forum to forum. It chose California before it went to trial with Fairchild in Delaware on validity. It did so to avoid the effects of an unfavorable verdict. After prevailing, it quickly switched to Delaware. Defendants ask the Court to grant its motion and prevent PI from profiting from its gamesmanship.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

_____

Steven Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*
*BCD Semiconductor*
*Corporation and Shanghai*
*SIM-BCD Semiconductor*
*Manufacturing, Co., Ltd.*

*Of Counsel*:

E. Robert Yoches
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000

Robert L. Burns
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA 20190
(571) 203-2700

Erik R. Puknys
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
3300 Hillview Avenue
Palo Alto, CA 94304
(650) 849-6600

Dated: February 19, 2008
188380.1

19

# EXHIBITS 1 & 2

# REDACTED IN THEIR ENTIRETY