IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BCD SEMICONDUCTOR CORP, et al., <br><br> Defendants. | C.A. No. 07-633 JJF-LPS |

**POWER INTEGRATIONS, INC.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247) (marsden@fr.com)
Kyle Wagner Compton (#4693) (kwc@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Howard G. Pollack
Michael R. Headley
Scott A. Penner
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

**ATTORNEYS FOR PLAINTIFF
POWER INTEGRATIONS, INC.**

Dated: March 21, 2008

**TABLE OF CONTENTS**

|     |     | Page |
| --- | --- | --- |
| I.  | The Theory of Dual Jurisdiction Under §§ 3104(c)(1) and (c)(4) of the Delaware Long-Arm Statute is Applicable to This Case | 1 |
| II. | Specific BCD Acts Purposefully Directed Toward Delaware | 6 |
| III.| Jurisdictional Discovery as an Alternative to Dismissal | 9 |
|     | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A. Uberti & Co. v. Leonardo In & For Pima*,
  892 P.2d 1354 (Ariz. 1995)..........................................................................................2

*Asahi Metal Industrial Co. v. Superior Court*,
  480 U.S. 102 (1987)...................................................................................................1, 7

*Barone v. Rich Brothers Interstate Display Fireworks Co.*,
  25 F.3d 610 (8th Cir. 1994) ..........................................................................................7

*Boone v Oy Partek*,
  724 A.2d 1150 (Del. Super. 1997), *aff'd* 707 A.2d 765 (Del. 1998) ...................... 1-4

*LaNuova D&B, S.p.A v. Bowe Co.*,
  513 A.2d 764 (Del. Supr. 1986).................................................................................1, 4

*Philips v. Contec*,
  2004 WL. 503602 (D. Del. Mar. 11, 2004) .................................................................2

*Tobin v. Astra Pharm. Prod., Inc.*,
  993 F.2d 528 (6th Cir. 1993) ....................................................................................2, 7

*Tristrata Tech., Inc. v. Emulgen Laboratoriess, Inc.*,
  2008 WL. 508600 (D. Del. Feb. 25, 2008) .................................................................6

*Wright v. American Home Products Corp.*,
  768 A.2d 518 (Del. Super. 2000)........................................................................ 1-4, 7

**FEDERAL STATUTES**

FRCP 30(b)(6) ...................................................................................................................3

In its March 14, 2008 Order [D.I. 51], the Court requested supplemental briefing to address three issues. In summary, Power Integrations' response is as follows:

1. The theory of dual jurisdiction under §§ 3104(c)(1) and (c)(4) of the Delaware long-arm statute applies directly to this case and supports this Court's exercise of personal jurisdiction over BCD, as discussed more fully in Section I below;

2. Evidence of record shows several specific acts by BCD purposefully directed toward Delaware that satisfy the requirements of due process under Justice O'Connor's test articulated in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987), as described more fully in Section II below; and

3. Although Power Integrations believes that the current record is sufficient to support this Court's exercise of personal jurisdiction over BCD, Power Integrations has identified the specific jurisdictional discovery it seeks in the alternative in Section III below.

### I. The Theory of Dual Jurisdiction Under §§ 3104(c)(1) and (c)(4) of the Delaware Long-Arm Statute is Applicable to This Case

The exercise of personal jurisdiction under a stream of commerce theory is proper under 10 Del. C. §§ 3104(c)(1) and (c)(4) of the Delaware long-arm statute. *LaNuova D&B, S.p.A v. Bowe Co.*, 513 A.2d 764, 768 n.3 (Del. Supr. 1986); *Boone v Oy Partek*, 724 A.2d 1150, 1157-58 (Del. Super. 1997), *aff'd* 707 A.2d 765 (Del. 1998); *Wright v. American Home Prods. Corp.*, 768 A.2d 518, 527-28 (Del. Super. 2000). BCD has placed its infringing products in a stream of commerce, resulting in a large volume of BCD's infringing products being sold in Delaware which has injured Power Integrations. Under these facts, the theory of dual jurisdiction is applicable, and supports this Court's exercise of personal jurisdiction over BCD.

The dual basis for long-arm jurisdiction under §§ 3104(c)(1) and (c)(4) was first posited, but not applied, by the Delaware Supreme Court in *LaNuova*. 513 A.2d at 768, n.3. *LaNuova*

recognized the potential viability of the theory but did not need to rely on it because the Italian manufacturer opposing jurisdiction in that case satisfied the requirements of § 3104(c)(4) through its marketing efforts, including delivery of warranties upon installation of its roofing materials by third party contractors in Delaware.

In *Boone*, the Delaware Superior Court recognized that the stream of commerce theory of personal jurisdiction had been determined to be consistent with due process under Supreme Court precedent, including *Asahi* and *World-Wide Volkswagen*, and that the Delaware long-arm statute, which is to be interpreted liberally to extend to the limits of due process, therefore also permits exercise of personal jurisdiction based on stream of commerce facts. 724 A.2d at 1156-57. Characterizing stream of commerce as in some senses a theory of general jurisdiction and in others a theory of specific jurisdiction, the *Boone* court seized upon the *LaNuova* Court's dual jurisdiction concept as a "fitting solution," and concluded that "when a manufacturer has sufficient general contacts with Delaware and the plaintiffs' claims arise out of those contacts, jurisdiction is appropriate under § 3104(c)(1) and (c)(4)." *Id.* at 1157.

The important feature of this dual theory of jurisdiction is its focus on the interplay between specific jurisdiction under § 3104(c)(1) and general jurisdiction under § 3104(c)(4) in order to reconcile the Delaware statutory framework, and the acknowledged State policy of extending jurisdiction to the limits of due process, with Supreme Court precedent sanctioning the exercise of jurisdiction in stream of commerce cases. The *Boone* Court explicitly emphasized that the strict requirements of either 3104(c)(1) or 3104(c)(4) in isolation will not defeat exercise of personal jurisdiction under the dual theory:

> [O]ne must take great care not to overemphasize §§ 3104(c)(1) or (c)(4) under this analysis. It is not important that the indicia of activity under § 3104(c)(4) rise to a level of "general presence" as usually required. Instead, the enumerated activities in this section should be analyzed to determine whether there is an intent

2

>or purpose on the part of the manufacturer to serve the Delaware market with its product. Likewise, when analyzing § 3104(c)(1) it is not important that the manufacturer itself act in Delaware. Instead, if the intent or purpose on behalf of the manufacturer to serve the Delaware market results in the introduction of the product to this State and plaintiff's cause of action arises from injuries caused by that product, this section is satisfied.

724 A.2d at 1158.

*Boone* demonstrates that BCD is subject to personal jurisdiction under the Delaware long-arm statute. Under *Boone*, the touchstone of the § 3104(c)(4) portion of the analysis is intent and purpose to serve the Delaware market. 724 A.2d at 1158. The *Boone* Court found such intent on the part of a Finnish manufacturer who engaged a distributor — an independent company over which the manufacturer had no control — to sell its asbestos in the United States. *Id.* The Court found the manufacturer's intent and purpose to serve Delaware implicit in its intent to serve the country as a whole through that distributor. *Id.*

The *Boone* Court found further indicia of activity relevant to § 3104(c)(4) in the actual shipment of asbestos, through distribution channels, into Delaware, and that the manufacturer derived substantial revenue from Delaware. *Id.* Because the indicia of activity under (c)(4) were sufficient to reach the transactional level of § 3104(c)(1), and a nexus existed between the tort claim and the manufacturer's product (the claim was for injury from exposure to the asbestos), the Court found a proper basis for exercise of personal jurisdiction. *Id.* The Delaware Supreme Court affirmed the *Boone* Court's jurisdictional analysis. 707 A.2d 765.

The Delaware Superior Court revisited *Boone* more recently in *Wright*, with a similar result. 768 A.2d 518. The French defendants who challenged jurisdiction in *Wright* manufactured nothing; they instead licensed various U.S. entities to manufacture and sell diet pills throughout the U.S. *Id.* at 529. Nevertheless, the *Wright* Court found a "clear pattern of repeated activity" in Delaware, evidenced by substantial sales in Delaware, sufficient to justify

3

exercise of personal jurisdiction under §§ 3104(c)(1) and (c)(4). *Id.* at 530. Like *Boone*, the *Wright* Court found the French defendants' intent and purpose to serve Delaware implicit in their interactions with third parties who in turn served the Delaware market. *Id.* at 531.

Whether analyzed separately or as part of a dual jurisdictional theory, *LaNuova, Boone*, and *Wright* also show that any of the three indicia of activity enumerated in §3104(c)(4) is sufficient to support exercise of personal jurisdiction. For example, because the indicia of activity set forth in (c)(4) are listed disjunctively — "or derives substantial revenue" — if a persistent course of conduct is demonstrated, exercise of jurisdiction is not defeated by failure to also demonstrate that the defendant derived substantial revenue from its contacts with the forum state. *See LaNuova*, 513 A.2d at 769 (holding that it is unnecessary to satisfy the substantial revenue test when persistent course of conduct is shown); *Boone*, 724 A.2d at 1158 (citing derivation of substantial revenue as a factor in addition to solicitation of business supporting jurisdiction). *See also Wright*, 758 A.2d at 529-30 (finding personal jurisdiction even though Delaware sales accounted for only 0.19% of national sales).

Under the dual jurisdiction theory of *Boone*, BCD's acts come within the long arm statute "if the intent or purpose on behalf of the manufacturer to serve the Delaware market results in the introduction of the product to this State and plaintiff's cause of action arises from injuries caused by that product." 724 A.2d at 1158. As an initial matter, there can be no dispute that BCD's infringing products are being sold in Delaware in large volumes, or that the cause of action for patent infringement arises from injury caused by the sale and use of those products. The only possible question, therefore, is BCD's intent and purpose to serve the Delaware market, but that is established by the same kinds of acts that were found to demonstrate an intent and purpose to serve the Delaware market in *Boone* and *Wright*.

4

Like the Finnish manufacturer in *Boone* and the French defendants in *Wright*, BCD employs one or more distributors and claims to have "established distribution channels" to sell its products in the United States, with no state excluded. [Ex.[1] N at 1; Ex. O at 4, 5; Ex. T (BCD web site noting "E-ORDER FOR CUSTOMER").] BCD even maintains a U.S. sales agent, a fact not present in *Boone* or *Wright*, and unlike the French defendants in *Wright*, BCD itself manufactures the products that have caused tortious injury in Delaware. As was the case in both *Boone* and *Wright*, BCD's intent to serve the Delaware market is implicit in its use of distributors and a sales agent to sell its products to the U.S. market as a whole. And while BCD contends that neither it nor its distributors have sold the accused AP3700 chips in Delaware to date, D.I. 43 at 2, BCD has never alleged that its sales agent and distributor exclude Delaware from their sales territory of the "U.S.A." [*See* Ex. I at 111 ("we also have sales offices in . . . Hayward, California"); Ex. O at 5 (Future's "territory" includes "U.S.A."). *See also* Exs. F, G, & H (listing BCD's U.S. sales office on the datasheets for all of the products at issue).]

More importantly, BCD's infringing products have unquestionably been shipped into Delaware and sold through established distribution channels for Samsung cell phones and cell phone chargers. Although neither *Boone* nor *Wright* considered the use of a downstream customer's distribution channels (such as Samsung's), there is no logical reason why relying on such established distribution channels should be treated differently from contracting directly with a distributor. This is particularly true when the result is the same, as it is here ─ shipment to and sale of infringing products in Delaware, with the knowledge and expectation that such sales will in fact occur as part of an overall plan to exploit the United States market.

---

[1] Exhibit citations A – S refer to the Exhibits attached to the Declaration of Kyle Wagner Compton filed in connection with Power Integrations' Opposition brief. D.I. 34. Exhibit T is attached to the concurrently-filed Supplemental Declaration of Kyle Wagner Compton.

Although BCD in its reply brief describes a chain of distributors and customers between itself and end-customer Samsung, which BCD relies on to assert it has no idea how or where its chips are used [D.I. 43 at 2-3], BCD's statements in SEC filings paint a different picture: "[w]e maintain close, direct relationships with key market-leading end users of our products, including . . . Samsung in South Korea." [Ex. I at 1.] BCD's purported ignorance is simply not credible. BCD, through its "close, direct relationship" with Samsung, was fully aware of the markets that Samsung addressed, and purposefully supplied infringing chips intending that they would be sold wherever Samsung cell phones are sold, including the United States, and including Delaware.[2]

BCD's products have entered the State of Delaware and caused harm to Power Integrations as a direct, foreseeable result of BCD's acts of exploiting the established trade channels of both itself and its OEM customers. Because the evidence of record also shows affirmative acts that demonstrate BCD's intent and purpose to serve the Delaware market, BCD's acts are sufficient to fall within the scope of the Delaware long-arm statute under the dual jurisdiction analysis of *LaNuova*, *Boone*, and *Wright*, particularly given that the long-arm statute is construed "liberally to confer jurisdiction to the maximum extent possible." *Tristrata*, 2008 WL 508600, at *3 (Farnan, J). This Court's exercise of personal jurisdiction is proper.

## II.    Specific BCD Acts Purposefully Directed Toward Delaware

BCD has engaged in several specific acts, supported in the record, purposefully directed

---

[2] In its reply brief, BCD also repeatedly refers to the small dollar value of its Delaware sales as a basis for defeating personal jurisdiction under § 3104(c)(4), arguing that it has not generated substantial revenue. D.I. 43 at 8, 10. As noted above, because Power Integrations has already demonstrated BCD's persistent course of conduct touching Delaware, substantial revenue need not also be demonstrated. While Power Integrations believes that the scope of infringing contact is sufficiently "substantial" when compared with other cases finding jurisdiction discussed in Power Integrations' earlier brief, *see* D.I. 31, the requirement of substantiality is relaxed where, as here, the forum-related conduct — BCD's sale of infringing products in Delaware — forms the basis of the injuries alleged. *See Tristrata*

6

toward Delaware, including at least employing its own distributors and sales agents and/or employing the distribution channels of its customers to market its infringing products in and throughout the United States, without excluding Delaware. In addition, BCD has likely engaged in other conduct purposefully directed toward Delaware that is not currently in the record because BCD has frustrated Power Integrations' discovery. This additional conduct likely includes 1) issuance of warranties; 2) indemnification of distributors or customers;[3] and 3) soliciting investments in Delaware specifically, in connection with its planned initial public offering.[4] Accordingly, this Court's exercise of personal jurisdiction over BCD comports with the requirements of Constitutional Due Process under the test articulated by Justice O'Connor in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987).

The Supreme Court in *Asahi* found that personal jurisdiction of a California court over a Japanese manufacturer was improper under the "fair play and substantial justice" prong of the due process analysis in a dispute between the Japanese manufacturer and a Taiwanese manufacturer based on a transaction that took place in Taiwan. *Id.* at 114-16. In Part II-A of the *Asahi* opinion, with which a majority of justices did not agree, Justice O'Connor opined that placement of a product into a stream of commerce was insufficient to meet the due process requirements of personal jurisdiction under the facts of that case.[5] Instead, some additional "act of the defendant purposefully directed toward the forum state" is necessary. *Id.* at 112.[6]

---

*Tech., Inc. v. Emulgen Labs., Inc.*, 2008 WL 508600, at *5 (D. Del. Feb. 25, 2008) (where the sales constitute the injury, even "de minimus" sales are enough).

[3] While BCD's F-1 statement refers to agreements with distributors, including mention of indemnities and warrantees, *see* Ex. I at 111, BCD has not produced those agreements.

[4] BCD also maintains a web site, www.bcdsemi.com, which includes English-language pages and provides datasheets, applications notes, and other materials to support customers' use of BCD's products. This is clearly a channel for providing regular advice to customers, but BCD has thus far withheld discovery that would show U.S. or Delaware users' access.

[5] A key fact differentiating *Asahi* is that the dispute was one for indemnification between two foreign entities – the injured plaintiff in the underlying suit had made no claim against the cross-claim defendant who was challenging jurisdiction. Other courts have noted this

7

In Justice O'Connor's view, consistent with *Boone*, additional conduct sufficient to satisfy due process requirements should "indicate an *intent or purpose* to serve the market in the forum state." *Id.* (emphasis added). A non-exclusive list of such conduct includes "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

As discussed above in Section I, Power Integrations has already presented substantial evidence of BCD's conduct indicating *intent and purpose* to serve the Delaware market under the identical test that Delaware state courts apply in considering the application of state long-arm jurisdiction. Namely, BCD employs a distributor and a sales agent and thus has its own established distribution channels, and it also uses the distribution channels of its customers to market its infringing products in and throughout the United States, with no state excluded. The same evidence is sufficient to show intent and purpose to serve the market in Delaware under Justice O'Connor's due process analysis.

Although BCD's distribution network – and website – are directed to the markets of all states, many other courts considering stream of commerce jurisdiction under *Asahi* have held that it is illogical to conclude that a foreign manufacturer who wants to exploit the whole U.S. market

---

distinction. *See, e.g., Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 614 (8th Cir. 1994) ("*Asahi* stands for no more than that it is unreasonable to adjudicate third-party litigation between two foreign companies in this country absent consent by the nonresident defendant."). *See also Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 545 (6th Cir. 1993); *Wright*, 768 A.2d at 532 ("[t]his is a direct action, not one of indemnification").

[6] A close reading of *Asahi* suggests that the majority of the justices disagreed with Justice O'Connor and more closely aligned with Justice Brennan. In his own opinion, Justice Stevens expressed the view that a course of dealing that resulted in the shipment of thousands of products into the forum state would normally be sufficient itself to establish jurisdiction. *Asahi* at 122. *See Barone*, 25 F.3d at 614 ("[I]t appears that five justices agreed that continuous placement of a significant number of products into the stream of commerce with knowledge that the product would be distributed into the forum state represents sufficient minimum contacts to satisfy due process.").

8

should be insulated from suit in each individual state simply because it has not, per se, directed its activity to any specific state. *See, e.g., A. Uberti & Co. v. Leonardo In & For Pima*, 892 P.2d 1354, 1359-62 (Ariz. 1995); *Tobin*, 993 F.2d at 544; *Barone*, 25 F.3d at 614-15; *Wright*, 768 A.2d at 531-36; *Boone*, 724 A.2d at 1160-61 (collecting cases). Insulating such defendants would also be unfair to the residents of states like Delaware, including Power Integrations, who are subsequently injured by products of the manufacturer which ▬ predictably and intentionally ▬ make their way to Delaware as a result of the manufacturer's overall business plan.

As noted above, the record developed to date also suggests there are other acts by BCD directed at Delaware. For example, although there is evidence that BCD's distributors and customers have requested, and BCD has in some cases provided, indemnification, including specifically indemnification for patent infringement [Ex. I at 17, 111], Power Integrations has not been permitted discovery concerning warranties BCD has extended to distributors and customers, such as those found sufficient to support exercise of personal jurisdiction in *LaNuova*. 513 A.2d at 769-70. *See also Philips v. Contec*, 2004 WL 503602, at *4-5 (D. Del. Mar. 11, 2004). Nor has there been discovery concerning BCD's solicitation of investors in connection with its proposed initial public offering of stock. That BCD made such solicitations to investors throughout the United States and including Delaware is clear from BCD's F-1 filings with the SEC. This solicitation of funds, while only indirectly related to BCD's placing infringing products into the stream of commerce, is another independent "additional act" that would support exercise of jurisdiction in combination with the other facts noted above.

**III.   Jurisdictional Discovery as an Alternative to Dismissal**

Although Power Integrations believes that the current record is sufficient to support this Court's exercise of personal jurisdiction over BCD, if the Court disagrees, Power Integrations

9

requests jurisdictional discovery[7] in the following areas:

1. BCD's agreements with its distributors, and documents associated therewith, to allow evaluation of the issues of territory and warrantees;

2. BCD's communications with Samsung and/or its sub-contractors related to the design of cell phone chargers using BCD chips, including specifically Samsung's specifications for compliance with U.S. and State regulatory standards and BCD's efforts to meet those requirements;

3. All documents relating to the design or testing of BCD products or power supplies incorporating those products for compliance with U.S. regulatory standards for safety (e.g. UL), EMI (e.g. FCC) or energy efficiency (e.g. Energy Star);

4. Documents related to BCD's efforts to analyze the U.S. market for its products or any end product incorporating its products;

5. Documents related to BCD's efforts to solicit sales to U.S. companies, including those listed as "Key Customers" in Exhibit N;

6. Documents related to making BCD's web site accessible to users in the U.S. and any records or logs of communications between BCD and U.S. residents, including in Delaware, through its web site or electronic mail;

7. Documents relating to BCD's efforts to raise capital culminating in the filing of its F-1, including identification of all U.S. residents to whom BCD or its agents sent information or whom BCD contacted or made plans to contact for the purpose of soliciting investment, including specifically Delaware residents.[8]

8. Depositions of knowledgeable persons pursuant to FRCP 30(b)(6) on topics 1-7.

**CONCLUSION**

For the reasons discussed above, this Court's exercise of personal jurisdiction over BCD is warranted under 10 Del. C. §§ 3104(c)(1) and (c)(4), and comports with constitutional due process. Accordingly, BCD's motion to dismiss should be denied.

---

[7] Power Integrations notes that BCD should already have provided much of this discovery, as Power Integrations' Interrogatories and Requests for Production sought much of it, but BCD has refused to produce documents or provide much beyond cursory interrogatory responses which invoke FRCP 33(d) – again, without producing the documents.

[8] Complete discovery on topics 4 and 5 will likely require third-party discovery from BCD's distributor, Future. Complete discovery on topic 7 will likely require third-party discovery from the underwriters and investment bankers who worked with BCD on its offering.

10

Dated: March 21, 2008 FISH & RICHARDSON P.C.

By: */s/ Kyle Wagner Compton*
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070
Facsimile: (302) 652-0607
Email: marsden@fr.com
Email: kwc@fr.com

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Howard G. Pollack
Michael R. Headley
Scott A. Penner
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

**ATTORNEYS FOR PLAINTIFF
POWER INTEGRATIONS, INC.**

11

# CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2008, I electronically filed **POWER INTEGRATIONS, INC.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel. In addition, the filing will also be sent via hand delivery:

| | |
|---|---|
| Steven J. Balick<br>John G. Day<br>Tiffany Geyer Lydon<br>Ashby & Geddes<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899 | Attorneys for Defendants<br>BCD SEMICONDUCTOR<br>MANUFACTURING CORPORATION<br>and SHANGHAI SIM-BCD<br>SEMICONDUCTOR<br>MANUFACTURING, CO., LTD |

I also certify that on Mach 21, 2008, I sent the document to the following individuals via electronic and first class mail:

| | |
|---|---|
| E. Robert Yoches, Esq.<br>Finnegan, Henderson, Farabow, Garrett &<br>Dunner LLP (Washington DC)<br>901 New York Avenue, NW<br>Washington, DC 20001-4413 | Attorneys for Defendants<br>BCD SEMICONDUCTOR<br>MANUFACTURING CORPORATION<br>and SHANGHAI SIM-BCD<br>SEMICONDUCTOR<br>MANUFACTURING, CO., LTD |
| Erik R. Puknys<br>Finnegan, Henderson, Farabow, Garrett &<br>Dunner LLP (Palo Alto)<br>Stanford Research Park<br>3300 Hillview Avenue<br>Palo Alto, CA 94304-1203 | Attorneys for Defendants<br>BCD SEMICONDUCTOR<br>MANUFACTURING CORPORATION<br>and SHANGHAI SIM-BCD<br>SEMICONDUCTOR<br>MANUFACTURING, CO., LTD |
| Robert L. Burns<br>Finnegan, Henderson, Farabow, Garrett &<br>Dunner LLP (Virginia)<br>Two Freedom Square<br>11955 Freedom Drive<br>Reston, VA 20190-5675 | Attorneys for Defendants<br>BCD SEMICONDUCTOR<br>MANUFACTURING CORPORATION<br>and SHANGHAI SIM-BCD<br>SEMICONDUCTOR<br>MANUFACTURING, CO., LTD |

/s/ *Kyle Wagner Compton*
Kyle Wagner Compton