IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BCD SEMICONDUCTOR CORP, et al.,<br><br>Defendants. | C.A. No. 07-633 JJF-LPS<br><br><br>**REDACTED** |

**POWER INTEGRATIONS, INC.'S OPENING SUPPLEMENTAL BRIEF IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247) (marsden@fr.com)
Kyle Wagner Compton (#4693) (kwc@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Howard G. Pollack
Michael R. Headley
Scott A. Penner
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

**ATTORNEYS FOR PLAINTIFF
POWER INTEGRATIONS, INC.**

Dated: June 6, 2008

## I.     INTRODUCTION

The evidence submitted to the Court in Power Integrations' prior filings and with this brief shows that BCD's infringing products are readily available on the shelves of retailers throughout Delaware and that

## REDACTED

In maintaining its motion to dismiss, however, BCD argues that it is not subject to

## REDACTED

But the evidence directly contradicts these assertions.

BCD's documents confirm its intent and purpose to serve the U.S. market, including the Delaware market. Power Integrations cited some of this evidence as relevant to its Reply Brief in Support of its Motion for Entry of a Preliminary Injunction. [*See* D.I. 91 at 19 and Exhibits Z-HH]. Based on this newly discovered evidence and the Court's order of April 11, 2008, setting forth the applicable legal standards, on April 14, Power Integrations asked BCD to withdraw its motion. [D.I. 67; Ex. 1.][1] BCD refused.

---

[1]   Unless otherwise noted, exhibits referenced herein are attached to the Second Supplemental Declaration of Kyle Wagner Compton, filed contemporaneously herewith.

On April 29, 2008, Judge Farnan issued an opinion finding the exercise of personal

jurisdiction over a component manufacturer to be proper on facts substantially similar to those at

issue here.  *See LG Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp.*, 2008 WL 1897687

(D. Del. Apr. 29, 2008).  In that case, defendant Chi Mei Optoelectronics ("CMO") produced

allegedly infringing LCD modules that were incorporated by original equipment manufacturers

("OEMs") into computer monitors sold to end user Dell, which ultimately were available for sale

to consumers in electronics retail stores throughout Delaware.  The Court found that:

> While CMO itself may not have sold its LCD modules to Dell Corporation and
> OEMs in the State of Delaware, CMO clearly acted in consort with Dell
> Corporation and OEMs to consistently place products containing its allegedly
> infringing LCD modules into a national distribution network, and, as a result of
> these efforts, these products were sold in Delaware.

*Id.* at *5.  In light of the evidence that Power Integrations identified in reviewing BCD's

production documents and this Court's holding in *LG Philips*, Power Integrations renewed its

request that BCD withdraw its motion to dismiss.  [Ex. 2.]  BCD again refused.  [Ex. 3.]

BCD's motion to dismiss relies heavily on BCD's purported uncertainty regarding the

destination of Samsung cell phone chargers that incorporate BCD's infringing power supply

chips [D.I. 43-1 (Wang Decl.) at ¶ 7], but this is a red herring.  The Court has held that the

*"outstanding, dispositive issue"* is whether BCD had "intent and purpose to serve the Delaware

market, as part of the United States market, with the accused chips." [D.I. 67 at 20 (emphasis

added).]  The Court has further explained that "a non-resident firm's intent to serve the United

States market is sufficient to establish an intent to serve the Delaware market, unless there is

evidence that the firm intended to exclude from its marketing and distribution efforts some

portion of the country that includes Delaware." [*Id.* at 13.]  As discussed fully below, evidence

obtained through discovery demonstrates BCD's intent and purpose to serve the United States

market, and

REDACTED

Accordingly, the Court should deny BCD's motion to dismiss.

II.     **PROCEDURAL HISTORY**

Defendants BCD Semiconductor Corp. and Shanghai SIM-BCD Semiconductor Mfg.

Co., Ltd., (collectively, "BCD") moved to dismiss this action for lack of personal jurisdiction on

January 21, 2008. [D.I. 10.] The parties completed initial briefing on this issue, including

supplemental briefing requested in the Court's March 14, 2008 Order [D.I. 51], and the Court on

April 11, 2008 found that plaintiff Power Integrations, Inc. ("Power Integrations") made a prima

facie case for exercise of personal jurisdiction, permitting Power Integrations to take discovery

directed to evidence of BCD's intent and purpose to serve the United States market, including

Delaware. [D.I. 67 at 19; D.I. 67-2.] The Court subsequently provided a schedule for additional

supplemental briefing following completion of this discovery. [D.I. 72 at ¶ 3.] Power

Integrations has since obtained further evidence showing that BCD intended to serve the U.S.

market with the accused products, and pursuant to the Court's Orders, Power Integrations hereby

submits this supplemental brief setting forth that evidence.

III.    **ANALYSIS**

A.      **BCD Designed Power Supplies Incorporating its Accused Power Supply
        Chips Specifically for Use in the U.S. Market**

BCD's documents show that BCD knew and intended for its products to be used in the

United States

REDACTED

3

REDACTED

The frequency of these references leaves no doubt that BCD had "intent and purpose to serve the Delaware market, as part of the United States market, with the accused chips," including specifically by supplying chips for the Samsung cell phone chargers Power Integrations has identified for the Court as present in Delaware.

REDACTED

These documents are just a few examples. Power Integrations will not burden the Court with other, cumulative documents, as these adequately demonstrate BCD's intent to serve the United States market. Of course, as the Court already has seen, BCD's intent has been carried out,

---
2

REDACTED

4

resulting in the shipment of substantial numbers of the accused products in finished goods into

Delaware.

    Notwithstanding the evidence cited above, BCD has maintained'

**REDACTED**

    /In view of

evidence now of record, there can be no doubt that, "based on ongoing relationships with others

in the stream of commerce, it was reasonably foreseeable that BCD's accused products would

make their way into the Delaware market." [D.I. 67 at 15.]

**B.**     **BCD Designed and Tested its Accused Power Supply Chips for Compliance with U.S. Regulatory Standards**

REDACTED

---
3

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

which would satisfy even the stringent

O'Connor standard for personal jurisdiction. *Asahi Metal Industry Co., Ltd. v. Superior Court of*

*California*, 480 U.S. 102, 112 (1987).

    **C.**    **BCD Expressly Indemnified its Customers and Distributors Against Liability for Infringement Specifically of U.S. Patents**

REDACTED

9

REDACTED

The fact that BCD agreed to indemnify its customers, including specifically the customers that comprise the stream of commerce that led BCD's infringing chips to be sold and offered for sale in products in Delaware, further demonstrates BCD's "actual knowledge that the established distribution channels of others in the stream of commerce would predictably and regularly result in the entry of BCD's chips into Delaware."[5]

**D.    BCD Solicited Sales of its Accused Power Supply Chips to U.S. Companies**

In addition to the stream of commerce that has already caused BCD's infringing power supply chips to enter the U.S. and Delaware, evidence demonstrates BCD's intent and purpose to address the U.S. market directly. BCD's counsel has admitted that BCD has shipped samples of the accused products directly into the U.S. [D.I. 59 (3/27 Hearing Tr.) at 25:1-2], and

REDACTED

---

[5]    BCD's intent to serve the U.S. market is also evidenced by BCD's obtaining its own U.S. patents. *See, e.g.,* Ex. 26 (U.S. Patent No. 6,980,442); Ex. 27 (U.S. Patent No. 7,099,163). If BCD did not intend its products to be used in the United States, why would it go to the expense of obtaining patent protection to exclude competition here?

REDACTED

---
6

REDACTED

As such, the exercise of jurisdiction over BCD is proper.

**E.    BCD Did Not Exclude Delaware from its Efforts to Market, Distribute, or Sell its Accused Power Supply Chips in the U.S.**

BCD took no steps to exclude Delaware from its efforts to market, distribute, or sell its infringing power supply chips in the United States, or from its efforts to sell its chips abroad into solutions it knew were intended for or would be sold in large numbers in the United States.

REDACTED

[F

---

[7]   Power Integrations believes the evidence is so contrary to BCD's prior representations to the Court regarding BCD's business and intentions that those statements raise serious questions about those representations. For ease of review, we have attached a chart summarizing BCD's representations and the contrary evidence as Ex. 43 to this brief.

REDACTED

In fact, the evidence adduced to date shows that BCD's chips are contained in a substantial number of products sold in Delaware. Because BCD has disavowed any knowledge of the volume of its products that are incorporated in finished goods in the United States, Power Integrations sought discovery from each of the four wireless carriers from whom Power Integrations previously purchased chargers containing infringing BCD chips, to better estimate the volume of infringing BCD power supply chips that have been sold in the United States.

According to recent market survey data, those carriers (AT&T, Verizon, Sprint, and T-Mobile) account for, respectively, 28%, 26%, 21%, and 12% of the U.S. Market. [Ex. 33 (Chetan Sharma Consulting, *US Wireless Data Market Q1 2008 Update*) at 11, available at http://www.chetansharma.com/US%20Wireless%20Market%20Q1%202008%20Update%20-%20May%202008%20-%20Chetan%20Sharma%20Consulting.pdf (last visited June 5, 2008).]

REDACTED

13

REDACTED

In *LG Philips*, this Court found exercise of personal jurisdiction proper over a component manufacturer, noting that the manufacturer "certainly reaps substantial financial rewards from the large percentage of LCD monitors and televisions sold in North America," and that "a large portion of [manufacturer's] revenues from the United States market are a result of products incorporating its LCD module sold in Delaware, especially in light of [patentee's] evidentiary data that Delaware has been ranked eighth in the nation in per capita computer software store sales." 2008 WL 1897687 at *5. While the basis for personal jurisdiction in *LG Philips* was "general" jurisdiction under 10 Del. C. § 3104(c)(4), the volume of the sales made of the infringing products may still be relevant in the "hybrid" stream of commerce jurisdictional analysis present here [D.I. 67 at 14-15], and Power Integrations believes the Court's exercise of jurisdiction over BCD is appropriate under either theory in light of the sales numbers above. BCD certainly reaps substantial financial rewards from the tens of millions of Samsung cell phone chargers incorporating its chips that were sold in the United States between January 2007 and April 2008. The finding that a substantial portion of BCD's revenues are attributable to sale of cell phone chargers containing its infringing chips in Delaware is also warranted here, given that Delaware is ranked first in the nation in per capita mobile wireless telephone subscribers. [Ex. 36 (chart showing per capita mobile wireless telephone subscribers by state).] As such, the Court's exercise of jurisdiction over BCD is entirely reasonable.

---

8

REDACTED

14

## IV.    CONCLUSION

In view of the evidence of BCD's intent to serve the U.S. market with no effort to

exclude Delaware from those efforts, with the result being substantial sales in the U.S. and in

Delaware of cell phone charger products incorporating the accused BCD chips, the Court's

exercise of jurisdiction over BCD is proper, and the Court should deny BCD's motion to dismiss.


Dated: June 6, 2008                    FISH & RICHARDSON P.C.


                              By: */s/ Kyle Wagner Compton*
                                   William J. Marsden, Jr. (#2247)
                                   Kyle Wagner Compton (#4693)
                                   919 N. Market Street, Suite 1100
                                   P.O. Box 1114
                                   Wilmington, DE  19801
                                   Telephone: (302) 652-5070
                                   Email: marsden@fr.com
                                   Email: kwc@fr.com

                                   Frank E. Scherkenbach
                                   FISH & RICHARDSON P.C.
                                   225 Franklin Street
                                   Boston, MA 02110-2804
                                   Telephone: (617) 542-5070

                                   Howard G. Pollack
                                   Michael R. Headley
                                   Scott A. Penner
                                   FISH & RICHARDSON P.C.
                                   500 Arguello Street, Suite 500
                                   Redwood City, CA 94063
                                   Telephone: (650) 839-5070

                              ATTORNEYS FOR PLAINTIFF
                              **POWER INTEGRATIONS, INC.**